UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES EASTER, | Civil No. 09cv555 LAB(RBB) |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR ADDITIONAL DISCOVERY AND REPORT AND RECOMMENDATION DENYING DEFENDANTS MORRIS, PANICHELLO, AND PEREZ'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 52]** |
| v. | |
| CDC, State of California; B. MORRIS, Captain; L. PANICHELLO, Lieutenant; E. PEREZ, Correctional Officer, | |
| Defendants. | |

Plaintiff Charles Easter, a former state prisoner proceeding pro se and in forma pauperis, filed a civil rights complaint on March 18, 2009, pursuant to 42 U.S.C. § 1983 [ECF No. 1].[1] The events giving rise to the allegations in the Complaint, however, occurred approximately two and one-half years earlier, while Easter was housed at R.J. Donovan Correctional Facility ("Donovan"). (Compl. 1, ECF No. 1.)[2] In the Complaint, Plaintiff asserts Defendants violated his rights protected by the Fifth, Eighth, and

---

[1] Because the Complaint and attachments are not consecutively paginated, the Court will cite to the Complaint using the page numbers assigned by the Court's electronic case filing system.

[2] During the course of this action, Easter has been in and out of prison.

1  Fourteenth Amendments of the United States and the California

2  Constitutions when they placed Easter in a prison yard where he had

3  been assaulted by other inmates on a previous occasion, which

4  caused him to be assaulted a second time.  (Id. at 3-6.)

5      United States District Court Judge Larry A. Burns dismissed

6  Defendant "CDC State of California" sua sponte on June 1, 2009 [ECF

7  No. 7].  Then, on August 14, 2009, the remaining three Defendants,

8  Officer E. Perez, Lieutenant L. Panichello,[3] and Captain B. Morris

9  filed a Motion to Dismiss Plaintiff's Complaint for Failure to

10 State a Claim [ECF No. 15].  On February 1, 2010, this Court

11 recommended that the district court grant in part and deny in part

12 Defendants' Motion to Dismiss, and on March 9, 2010, Judge Burns

13 adopted the recommendation in its entirety [ECF Nos. 29-30].

14 Specifically, the monetary claims against Defendants Perez,

15 Panichello, and Morris in their official capacities were dismissed

16 without leave to amend, as were the supplemental state law claims

17 against Defendants in their official capacities.  (Order Adopting

18 Report & Recommendation 2, ECF No. 30; see also Report &

19 Recommendation 24-25, ECF No. 29.)  Easter's claim under the

20 Fourteenth Amendment was dismissed without leave to amend, and his

21 Fifth Amendment claim was dismissed with leave to amend.  (Id.)

22 Finally, Plaintiff's request for injunctive relief was stricken.

23 (Order Adopting Report & Recommendation 3, ECF No. 30; see also

24 Report & Recommendation 25, ECF No. 29.)  Plaintiff did not amend

25

26

27  [3]  Although initially sued as Lieutenant Panchello, Defendant's name has been corrected to Lieutenant L. Panichello, to add his first-name initial.  (See Report & Recommendation 2 n.1, ECF No. 29 (citing Compl. 1-2, 4, ECF No. 1; Mot. Dismiss Attach. #2 Mem. P. & A. 1-2, ECF No. 15).)

28

his Complaint, and on May 14, 2010, the three Defendants filed an Answer [ECF No. 32].

On January 3, 2011, Defendant Morris, Panichello, and Perez's Motion for Summary Judgment was filed, along with a Memorandum of Points and Authorities,[4] a Separate Statement of Undisputed Facts, and an Appendix of Evidence [ECF No. 52].[5]  The next day, Plaintiff was given notice, pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir. 1988) (en banc), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988), of his opportunity to submit additional evidence in opposition to Defendants' Motion for Summary Judgment [ECF No. 53]. The Court instructed that any opposition must be filed by January 24, 2011, and any reply must be filed by January 31, 2011. (Klingele/Rand Notice 2-3, ECF No. 53.)

Easter's fluctuating mailing addresses have challenged the Clerk of Court's ability to ensure that he receives copies of court documents.  Since the Defendants filed their Motion for Summary Judgment, Plaintiff has filed five notices of change of address in an attempt to keep the Court apprised of his current mailing address [ECF Nos. 54-55, 58, 65, 67].  Easter sought an extension of time to oppose Defendants' Motion on February 1, 2011, which the

---

[4]   The Memorandum of Points and Authorities indicates that it is in support of "Defendant Morales's Motion for Summary Judgment." (See Mot. Summ. J. Attach. #1 Mem. P. & A. 1, ECF No. 52.)  The Court construes this as a typographical error and will consider the document as supporting Defendant Morris, Panichello, and Perez's Motion for Summary Judgment.  (See Mot. Summ. J. 1, ECF No. 52.)

[5]   The Court will also cite to all documents in support of Defendants' Motion for Summary Judgment using the page numbers assigned by the Court's electronic case filing system.

Court granted [ECF No. 56-57].[6]  On March 2, 2011, Plaintiff filed a two-page letter titled, "Opposition to the Defendants' Motion for Summary Judgment," in which he stated that he had not received a copy of Defendants' Motion and requested an opportunity to respond [ECF No. 66].  Easter also mailed to the Court a second document titled, "Opposition to the Defendants' Motion for Summary Judgment," which was filed nunc pro tunc to March 7, 2011 [ECF Nos. 72, 73].  This three-page document, however, lacks substantive arguments and evidence in opposition.

During a telephonic conference on March 9, 2011, Easter informed the Court that despite Defendants' efforts, he still had not received a copy of their Motion for Summary Judgment [ECF No. 70].  The Court confirmed Plaintiff's mailing address and instructed defense counsel to forward Easter another copy of the Motion as well as a copy of the Court's Klingle/Rand Notice.  (Mins., Mar. 9, 2011, ECF No. 70.)  Plaintiff was given another extension of time to respond to the Motion; any opposition was to be filed by March 25, 2011, and any reply was to be filed by April 1, 2011.  (Id.)  That same day, defense counsel filed a Proof of Service indicating that a copy of the Motion for Summary Judgment and related documents, as well as a copy of the Klingele/Rand Notice, were mailed yet again to Plaintiff [ECF No. 71].

On March 30, 2011, before Easter's substantive opposition was filed and two days before Defendants' deadline to file a reply, Defendants' Reply to Plaintiff's Opposition to the Motion for Summary Judgment was filed [ECF No. 74].  The Reply responds to the

---

[6]  The corresponding Minute Order, as well as the Klingle/Rand Notice, were later returned to the clerk of the court as undeliverable [ECF Nos. 59, 69].

three-page Opposition filed nunc pro tunc to March 7, 2011.  (<u>See</u>
Reply 1, Mar. 30, 2011, ECF No. 74.)  Plaintiff then mailed a third
document titled, "Opposition to Defendants' Motion for Summary
Judgment" with exhibits that was docketed on April 1, 2011, but
filed nunc pro tunc to March 24, 2011 [ECF Nos. 75-76].  This third
"Opposition" is a substantive response to Defendants' Motion and
includes additional evidence in opposition.  (<u>See</u> Opp'n 1, 5-23,
Mar. 24, 2011, ECF No. 76.)  On April 7, 2011, Defendants' Reply to
Plaintiff's Opposition to the Motion for Summary Judgment was
filed, along with the Declaration of K. Cunningham [ECF No. 77],
which responds to Plaintiff's March 24th Opposition.

   As explained above, Plaintiff's third Opposition with
exhibits, filed nunc pro tunc to March 24, 2011, is his substantive
response to the Motion for Summary Judgment.  (Opp'n 1, 5-11, Mar.
24, 2011, ECF No. 76.)  Defendants' Reply filed on April 7, 2011,
responds to this Opposition.  (Reply 1-7, Apr. 7, 2011, ECF No.
77.)  Therefore, the Court construes these documents as the
Opposition and the Reply, but will also consider any relevant
arguments raised in Plaintiff's second Opposition [ECF No. 73], and
in the Defendants' first Reply [ECF No. 74], that are not also
addressed in the substantive Opposition [ECF No. 76] and Reply [ECF
No. 77], respectively.[7]

## I.  PROCEDURAL BACKGROUND

   This lawsuit is a renewal of the § 1983 action that Easter
commenced on January 29, 2007.  See <u>Easter v. CDC (Easter I)</u>, No.
07-cv-00187 L(RBB) (S.D. Cal. filed Jan. 29, 2007), ECF No. 1.

---

[7]  The Court will also cite to the oppositions using the page
numbers assigned by the Court's electronic case filing system.

There, Easter maintained that Defendants CDC State of California,
Morris, Panichello, Perez, and Hilton violated his Eighth Amendment
rights by placing him in the same prison yard where he had
previously been assaulted, causing him to be assaulted again.  _Id._
Defendants Perez, Panichello, and Morris filed a motion to dismiss
for failing to exhaust administrative remedies.  _Easter I_, No. 07-
CV-00187 L(RBB) (motion to dismiss), ECF No. 18.

This Court issued a report and recommendation that the claims
against defendants Perez, Panichello, and Morris be dismissed
without prejudice.  _Id._ (report and recommendation), ECF No. 30.
On November 20, 2008, United States District Court Judge James
Lorenz adopted in part, and modified in part, the report and
recommendation.  _Id._, slip op., ECF No. 32.  He granted the
defendants' motions and dismissed the complaint without prejudice.
_Id._ at 3.  As to exhaustion, Judge Lorenz held that Easter had
filed the lawsuit on January 29, 2007, but he did not submit his
administrative grievance to prison officials until February 7,
2007.  _Id._ at 2 (citation omitted).

The district court explained:

> [T]he court is troubled by the prison authorities'
> unresponsiveness in processing Plaintiff's grievance
> after February 7, 2007.  The Magistrate Judge found that
> the prison authorities had not at any level or at any
> time rejected Plaintiff's grievance as untimely.  He
> therefore found that Plaintiff could still complete the
> appeal of his grievance, and recommended that the
> complaint be dismissed without prejudice.  As of January
> 19, 2008, Plaintiff's second level appeal had been
> pending before the prison authorities at RJ Donovan state
> prison for some time, however, when he filed his
> objections to the Report and Recommendation on March 17,
> 2008, he still had not received a response.  As of that
> time, the prison authorities' twenty working days to
> respond to the second level appeal had long passed.

Id. (internal citations omitted).  Nonetheless, Judge Lorenz
dismissed the action without prejudice for failure to exhaust;
Easter had not submitted his grievance until after filing the
lawsuit.  Id. at 1-3.  The court therefore concluded that as of the
date of its order, November 20, 2008, the grievance process was
ongoing.  Id.

The Complaint in this case, filed on March 18, 2009, is a
resumption of the civil rights allegations Easter attempted to
litigate in his January 29, 2007 complaint.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Complaint

Plaintiff is an African-American who was incarcerated at
Donovan when the events giving rise to the Complaint occurred.
(See Compl. 1, ECF No. 1.)  On August 27, 2006, while Easter was
housed in yard four of building seventeen in Donovan, he was
assaulted by a group of Caucasian prisoners.  (See id. at 1, 3.)
An incident report was completed that same day, which noted
Easter's enemies.  (See id. at 3, 5.)  He was placed in the
administrative segregation unit ("AS") because of his involvement
in the fight.  (Id. at 3-5; id. Attach. #1, at 11.) Plaintiff was
later released from administrative segregation and placed in yard
two because he had enemies in yard four.  (See Compl. 3-5, ECF No.
1; id. Attach. #1, at 11.)  Easter was subsequently rehoused with
his inmate enemies again in yard four.  (Id.)  Then, on November
14, 2006, Plaintiff was attacked again, stabbed; he ultimately was
sent to the hospital with "life threatening injuries." (Compl. 3,
ECF No. 1.)

Plaintiff contends that Correctional Officer Perez made the decision to move Easter back to yard four even though she knew he had been previously attacked on that yard on August 27, 2006. (Id. at 2.)  As a result, Plaintiff was attacked a second time by approximately fifteen "skin heads with knives." (Id.)  Lieutenant Panichello knew that Easter had enemies on prison yard four, yet he nonetheless escorted Plaintiff back to the yard even though Plaintiff "told him that [he] wasn't supposed to go back to that yard" and there was other housing available for Easter. (Id. at 4.)  Finally, Defendant Captain Morris had prior knowledge of Easter's enemy concerns in facility four from incident reports created in response to the August 27, 2006 riot. (Id. at 2.)

Easter seeks $15,000,000 in monetary damages, $10,000,000 in punitive damages, and an order requiring Defendants to pay the costs Plaintiff incurred litigating this action. (Id.)

**B.    <u>Facts Not Subject to Dispute</u>**

The Defendants have included with their Motion a statement of facts they contend are not in dispute with a citation to supporting evidence. (Mot. Summ. J. Attach. #2 Separate Statement Undisputed Facts 1-7, ECF No. 52.)  On August 27, 2006, there was a racial riot in facility four involving African-American and Caucasian inmates. (Id. at 1 (citing id. Attach. #3 App. Evidence Ex. A, at 4, Ex. J Decl. Morris 63-64).)  A large group of prisoners ignored officials' repeated orders to cease fighting. (Id.)  Several inmates who were not already participating in the fight attempted to get involved, but ultimately chose to lie down on the ground when officials used a thirty-seven millimeter gas gun. (Id. at 1-2.)  Easter was one of these African-American prisoners who tried

to participate in the riot but chose not to.  (<u>Id.</u> at 2 (citing <u>id.</u> Attach. #3 App. Evidence Ex. A, at 4, Ex. J Decl. Morris 64, Ex. P, at 91).)  It appears that Easter was not assaulted or injured in the riot; the medical report indicates that he had no visible injuries.  (<u>Id.</u> (citing <u>id.</u> Attach. #3 App. Evidence Ex. B, at 6, Ex. J Decl. Morris 64).)

As a result of his attempt to participate in the riot, Plaintiff was disciplined for engaging in conduct that "may lead to violence."  (<u>Id.</u> (citing <u>id.</u> Attach. #3 App. Evidence Ex. J Decl. Morris 64).)  Easter was placed in administrative segregation in facility two with numerous inmates who participated in the August 27, 2006 riot.  (<u>Id.</u> (citing <u>id.</u> Attach. #3 App. Evidence Ex. C, at 8, Ex. J Decl. Morris 64.)  On September 28, 2006, Easter's Notice of Critical Case Information -- Safety of Persons List ("enemy list") was updated by R. Velo; under the column "nonconfidential enemies," "none noted" was written.  (<u>Id.</u> (citing <u>id.</u> Attach. #3 App. Evidence Ex. D, at 10, Ex. J Decl. Morris 64).)

Defendants state that prison officials learn of threats to a particular inmate's safety is when the inmate to communicates the threat to the staff.  (<u>Id.</u>)  The prisoner must identify the specific individual enemy and describe why he believes the individual poses a threat; officials then document the enemy in a CDC Form 128B chrono.  (<u>Id.</u>)  Inmates are not permitted to place an entire ethnicity or race on an enemy list because prison officials believe it would be impracticable to segregate by ethnicity.  (<u>Id.</u> at 2-3.)  Prison authorities may also learn of threats to a prisoner's safety when the official learns that the inmate is involved in mutual combat or another incident with an identifiable

prisoner. (Id. at 3.) Because Plaintiff did not participate in the August 27, 2006 riot, unless he directly communicated to prison officials that a certain inmate posed a threat to his safety, the Defendants would not add any enemies to Plaintiff's enemy list. (Id.) Easter never told prison officials that a particular person posed a threat to his safety. (Id. (citing id. Attach. #3 App. Evidence Ex. J. Decl. Morris 64-65).)

When a prisoner is housed in administrative segregation, the Institutional Classification Committee ("ICC") meets with the inmate and reviews his central file to determine whether he should be transferred back to the general prison population. (Id. (citing id. Attach. #3 App. Evidence Ex. J Decl. Morris 65, Ex. K Decl. Panichello 70).) According to Captain Morris, on September 29, 2006, the committee met with Easter and concluded that he was no longer a threat to prison security, and the committee noted that Plaintiff did not have any safety concerns. (Id.) If Easter expressed any concerns at this time, ICC would have addressed them. (Id. (citing id. Attach. #3 App. Evidence Ex. E, at 12, Ex. J. Decl. Morris 65).) Plaintiff was released from facility two to the reception center in facility four. (Id. (citing id. Attach. #3 App. Evidence Ex. F, at 14-16, Ex. J Decl. Morris 65); see also, id. Ex. L Decl. Perez 73.)

Defendant Perez is a Correctional Officer in Housing Assignments, and her duty is to find cell placements for prisoners housed in facility four. (Mot. Summ. J. Attach. #2 Separate Statement Undisputed Facts 3, ECF No. 52.) The classification committee takes all considerations into account when selecting housing assignments for inmates, including the location of any

enemies.  (<u>Id.</u>)  Perez relies entirely on the committee's determinations regarding cell placements whenever a prisoner is removed from administrative segregation.  (<u>Id.</u> at 3-4 (citing <u>id.</u> Attach. #3 App. Evidence Ex. L Decl. Perez 73).)  Perez's office is not located on facility two or facility four, and she does not speak with the prisoners.  (<u>Id.</u>)  At no time did Easter inform Perez that he was hesitant about being housed in facility four. (<u>Id.</u>)  According to Perez, she was not notified of any potential enemies in facility four that posed a threat to Easter's safety or of any reason why he should not be placed there.  (<u>Id.</u> at 4 (citing <u>id.</u> Attach. #3 App. Evidence Ex. L Decl. Perez 73).)  Easter concedes that he has not had any conversations with Officer Perez in more than ten years and had no written communication with her after the August riot.  (<u>Id.</u> (citing <u>id.</u> Attach. #3 App. Evidence Ex. P, at 98-99, 101).)

     Defendant Panichello states that he does not remember Easter expressing any concern that being transferred back to facility four posed a risk to Plaintiff's safety; had he done so, Panichello would have investigated Plaintiff's claims and taken appropriate action.  (<u>Id.</u> (citing <u>id.</u> Attach. #3 App. Evidence Ex. K Decl. Panichello 70).)

     After Easter was transferred to facility four, he informally asked Defendant Morris to transfer him back to facility two.  (<u>Id.</u> (citing <u>id.</u> Attach. #3 App. Evidence Ex. J Decl. Morris 65-66).) Morris specifically asked Easter if remaining in facility four posed a threat to his safety, and Plaintiff denied having enemy concerns.  (<u>Id.</u>)  Captain Morris does not recall Easter giving any reason for his request to be transferred back to facility two,

1  therefore, there was no basis for Morris to conclude that

2  Plaintiff's safety would be in jeopardy in facility four.  <u>Id.</u>

3      During his deposition, Plaintiff testified that he did not

4  communicate with Defendant Morris regarding threats to his safety

5  prior to the November 14, 2006 prison riot.  (<u>Id.</u> at 4-5.)  Easter

6  stated, "'I never talked to Captain Morris after the——[sic] I only

7  talked to Captain Morris after the second incident.  Never before

8  the first one.  Or after the first one.'"  (<u>Id.</u> at 5 (quoting <u>id.</u>

9  Attach. #3 App. Evidence Ex. P, at 93-95).)  Plaintiff subsequently

10 altered his statement by testifying that the did express his safety

11 concerns to Morris before the second riot.  (<u>Id.</u> (citing <u>id.</u>

12 Attach. #3 App. Evidence Ex. P, at 96-97).)  Easter also testified

13 that he did not give Defendants the names of potential enemies in

14 facility four because he did not know the specific identity of

15 potential enemies in that yard.  (<u>Id.</u> (citing <u>id.</u> Attach. #3 App.

16 Evidence Ex. P, at 100).)

17     On November 14, 2006, another riot between African-American

18 and Caucasian inmates occurred in facility four, causing Plaintiff

19 and numerous other prisoners serious injuries.  (<u>Id.</u> (citing <u>id.</u>

20 Attach. #3 App. Evidence Ex. G, at 18-43, Ex. J Decl. Morris 66).)

21 Prisoner Hill, CDC V-35354, was identified as the individual who

22 stabbed Easter during this fight.  (<u>Id.</u>)  Hill was added to

23 Plaintiff's enemy list on November 14, 2006, and again on April 16,

24 2007.  (<u>Id.</u> (citing <u>id.</u> Attach. #3 App. Evidence Ex. H, at 45, Ex.

25 J Decl. Morris 66).)  Inmate Hill did not, however, participate in

26 the August 27, 2006 riot, and there is no suggestion that he was

27 ever a threat to Easter's safety prior to the November 14, 2006

28 riot.  (<u>Id.</u>)  According to Captain Morris, unless Plaintiff

specifically communicated to prison officials that Hill was an enemy, it would have been impossible for staff to know that he posed a threat to Easter.  (<u>Id.</u> (citing <u>id.</u> Attach. #3 App. Evidence Ex. G, at 18-43, Ex. I, at 47-61, Ex. J Decl. Morris 66).)  During his deposition, Plaintiff admitted that Hill was not on his enemy list when the November 14, 2006 riot occurred, and he was unsure whether Hill was also involved in the August 27, 2006 riot.  (<u>Id.</u> at 5-6 (citing <u>id.</u> Attach. #3 App. Evidence Ex. J Decl. Morris 65-67, Ex. K Decl. Panichello 70, Ex. L Decl. Perez 73-74).)

### III.   LEGAL STANDARD FOR SUMMARY JUDGMENT MOTIONS

Federal Rule of Civil Procedure 56(c) provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Like the standard for a directed verdict, judgment must be entered for the moving party "if, under the governing law, there can be but one reasonable conclusion as to the verdict." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986) (citing <u>Brady v. S. Ry. Co.</u>, 320 U.S. 476, 479-80 (1943)).  "If reasonable minds could differ," judgment should not be entered in favor of the moving party.  <u>Id.</u> at 250-51; <u>see also</u> <u>Blankenhorn v. City of Orange</u>, 485 F.3d 463, 470 (9th Cir. 2007).

The parties bear the same substantive burden of proof that would apply at a trial on the merits, including plaintiff's burden to establish any element essential to his case.  <u>Liberty Lobby, Inc.</u>, 477 U.S. at 252; <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 805-06 (1999); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Liberty Lobby, Inc.</u>, 477 U.S. at 252; <u>see also</u> <u>Taylor</u>

13

v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  "When the nonmoving
party bears the burden of proof at trial, summary judgment is
warranted if the nonmovant fails to 'make a showing sufficient to
establish the existence of an element essential to [its] case.'"
Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (quoting Celotex
Corp., 477 U.S. at 322).  The absence of a genuine issue of
material fact on a single element of a claim is sufficient to
warrant summary judgment on that claim.  Celotex Corp., 477 U.S. at
322-23.

    The moving party bears the initial burden of identifying the
pleadings and evidence it "believes demonstrate the absence of a
genuine issue of material fact."  Id. at 323; Adickes v. S.H. Kress
& Co., 398 U.S. 144, 157 (1970); Martinez v. Stanford, 323 F.3d
1178, 1182-83 (9th Cir. 2003).  The burden then shifts to the
nonmoving party to establish, beyond the pleadings, that there is a
genuine issue for trial.  Celotex Corp., 477 U.S. at 324.  To
successfully rebut a defendant's properly supported motion for
summary judgment, the plaintiff "must point to some facts in the
record that demonstrate a genuine issue of material fact and, with
all reasonable inferences made in the plaintiff[']s[] favor, could
convince a reasonable jury to find for the plaintiff[]."  Reese v.
Jefferson School Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000)
(citing Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323; Liberty
Lobby, 477 U.S. at 249).  Material issues are those that "might
affect the outcome of the suit under the governing law."  Liberty
Lobby, 477 U.S. at 248; see also Chevron USA, Inc. v. Cayetano, 224
F.3d 1030, 1039-40 (9th Cir. 2000); SEC v. Seaboard Corp., 677 F.2d
1301, 1305-06 (9th Cir. 1982).  More than a "metaphysical doubt" is

required to establish a genuine issue of material fact.  <u>Matsushita</u>
<u>Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

In deciding whether any genuine issue of material fact remains
for trial, courts must "view[] the evidence in the light most
favorable to the nonmoving party . . . ."  <u>Fontana v. Haskin</u>, 262
F.3d 871, 876 (9th Cir. 2001); <u>see also</u> <u>Eastman Kodak Co. v. Image</u>
<u>Technical Serv., Inc.</u>, 504 U.S. 451, 456 (1992) (stating that the
nonmoving party's evidence is to be believed and all reasonable
inferences drawn in the nonmoving party's favor).  "When opposing
parties tell two different stories, one of which is blatantly
contradicted by the record, so that no reasonable jury could
believe it, a court should not adopt that version of the facts for
purposes of ruling on a motion for summary judgment."  <u>Scott v.</u>
<u>Harris</u>, 550 U.S. 372, 380 (2007).  While the district court is not
required to search the entire record for an issue of fact, the
court may nevertheless exercise its discretion to consider
materials in the record that are not specifically referred to.
<u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031
(9th Cir. 2001); <u>Forsberg v. Pacific N.W. Bell Tel. Co.</u>, 840 F.2d
1409, 1417-18 (9th Cir. 1988).

When the nonmoving party is proceeding pro se, the court has a
duty to consider "all of [the nonmovant's] contentions offered in
motions and pleadings, where such contentions are based on personal
knowledge and set forth facts that would be admissible in evidence,
and where [the nonmovant] attested under penalty of perjury that
the contents of the motions or pleadings are true and correct."
<u>Jones v. Blanas</u>, 393 F.3d 918, 922-23 (9th Cir. 2004) (citations
omitted).

15

09cv555 LAB(RBB)

### IV.   EXHAUSTION

The Defendants move for summary judgment under Federal Rule of Civil Procedure 56 for nonexhaustion as well as on the merits. Perez, Panichello, and Morris argue that Easter failed to exhaust his nonjudicial remedies before filing this lawsuit, as required by the Prison Litigation Reform Act, because he did not appeal his inmate grievance through the third level of review.  (Mot. Summ. J. 2, ECF No. 52; id. Attach. #1 Mem. P. & A. 5.)

**A.     The Rule of Exhaustion**

Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") states:  "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.A. § 1997e(a) (West 2003).  The exhaustion requirement applies regardless of the relief sought. Booth v. Churner, 532 U.S. 731, 741 (2001) (citation omitted).

"'[A]n action is "brought" for purposes of § 1997e(a) when the complaint is tendered to the district clerk[]' . . . ."  Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006) (quoting Ford v. Johnson, 362 F.3d 395, 400 (7th Cir. 2004)).  Therefore, prisoners must "exhaust administrative remedies before submitting any papers to the federal courts."  Id. at 1048 (emphasis added).

Section 1997e(a)'s exhaustion requirement creates an affirmative defense.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  "[D]efendants have the burden of raising and proving the absence of exhaustion."  Id. (footnote omitted).  Defendants in § 1983 actions properly raise the affirmative defense of failure to

16

exhaust administrative remedies through an unenumerated motion to dismiss under Rule 12(b).  Id. (citations omitted).

Unlike motions to dismiss for failure to state a claim for which relief may be granted, "[i]n deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. at 1119-20 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988)) (footnote omitted).  Courts have discretion regarding the method they use to resolve these factual disputes.  Ritza, 837 F.2d at 369 (citations omitted).  "A court ruling on a motion to dismiss also may take judicial notice of 'matters of public record.'"  Hazleton v. Alameida, 358 F. Supp. 2d 926, 928 (C.D. Cal. 2005) (citing Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (citations omitted)).  But "if the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust[,] . . . the court must assure that [the plaintiff] has fair notice of his opportunity to develop a record."  Wyatt, 315 F.3d at 1120 n.14.

If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice."  Id. at 1120 (citing Ritza, 837 F.2d at 368 n.3).

**B.   The California Administrative Grievance Process**

"The California Department of Corrections ['CDC'] provides a four-step grievance process for prisoners who seek review of an administrative decision or perceived mistreatment:  an informal level, a first formal level, a second formal level, and the Director's level."  Vaden, 449 F.3d at 1048-49 (citing Brown v.

17

Valoff, 422 F.3d 926, 929-30 (9th Cir. 2005)).  The administrative

appeal system can be found in title 15, sections 3084.1, 3084.5,

and 3084.6 of the California Code of Regulations ("CCR").[8]  See

Brown, 422 F.3d at 929-30 (citing Cal. Code Regs. tit. 15, §§

3084.1(a), 3084.5(a)-(b), (e)(1)-(2), 3084.6(c) (amended 2011)).

To comply with the CDC's administrative grievance procedure,

an inmate must file his grievance at the informal level within

fifteen working days of the event being appealed.  Cal. Code Regs.

tit. 15, § 3084.6(c) (2009); see also Brown, 422 F.3d at 929.  An

inmate must proceed through all levels of the administrative

grievance process before initiating a § 1983 suit in federal court.

See Vaden, 449 F.3d at 1051.

A prisoner's grievances must be "sufficient under the

circumstances to put the prison on notice of the potential claims

and to fulfill the basic purposes of the exhaustion requirement."

Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001).

Exhaustion serves several important goals, including "allowing a

prison to address complaints about the program it administers

before being subjected to suit, reducing litigation to the extent

complaints are satisfactorily resolved, and improving litigation

that does occur by leading to the preparation of a useful record."

Jones v. Bock, 549 U.S. 199, 219 (2007) (citing Woodford v. Ngo,

548 U.S. 81, 88-91 (2006); Porter v. Nussle, 534 U.S. 516, 524

---

[8] The regulations governing the prison administrative
grievance process were amended on December 17, 2010, effective
January 28, 2011.  See Cal. Code Regs. tit. 15, §§ 3084 - 3084.8
(amended 2011).  Because Easter filed the Complaint on March 18,
2009, the Court will use the regulations in effect at that time.
(See Compl. 1, ECF No. 1; Cal. Code Regs. tit. 15, §§ 3084 -
3084.8 (2009) (current version at Cal. Code Regs. tit. 15, §§ 3084
- 3084.8 (2011)); see also Shepard v. Cohen, No. 1:09-cv-01628,
2011 U.S. Dist. LEXIS 6838, at *4 n.1 (E.D. Cal. Jan. 25, 2011).

1  (2002)).

2  **C.   Dismissal Versus Summary Judgment**

3      The Defendants raise the affirmative defense of nonexhaustion

4  as part of their Motion and argue that summary judgment should be

5  granted.  (Mot. Summ. J. 2, ECF No. 52; id. Attach. #1 Mem. P. & A.

6  10-12.)  "[P]laintiff failed to exhaust administrative remedies,

7  this failure alone is grounds for the Court to grant this motion in

8  its entirety."  (Mot. Summ. J. 2, ECF No. 52.)

9      The Ninth Circuit has held that the proper pretrial vehicle

10  for challenging a prisoner's failure to comply with the exhaustion

11  requirement is to file an unenumerated motion to dismiss under

12  Federal Rule of Civil Procedure 12(b), rather than a motion for

13  summary judgment.  Wyatt, 315 F.3d at 1119 (citing Ritza, 837 F.2d

14  at 368); see Janis v. Ashcroft, 94 F. App'x 564, 566-67 (9th Cir.

15  2004); Cox v. Harris, 60 F. App'x 685, 686 (9th Cir. 2003).  The

16  general rule is that the "failure to exhaust nonjudicial remedies

17  is a matter in abatement, not going to the merits of the claim, and

18  as such is not properly raised in a motion for summary judgment."

19  Ritza, 837 F.2d at 368; see Stauffer Chem. Co. v. FDA, 670 F.2d

20  106, 108 (9th Cir. 1982).  "The appropriate procedure for raising

21  the failure-to-exhaust defense under 42 U.S.C. § 1997e(a),

22  therefore, is by a Rule 12(b) motion to dismiss."  Janis, 94 F.

23  App'x at 566-67 (citing Wyatt, 315 F.3d at 1119).

24      When a failure to exhaust defense is included in a motion for

25  summary judgment, courts should treat it as if it were raised in a

26  motion to dismiss.  Ritza, 837 F.2d at 368-69 ("[Exhaustion] should

27  be raised in a motion to dismiss, or be treated as such if raised

28  in a motion for summary judgment."); see Stauffer Chem. Co., 670

19

F.2d at 108 (finding that the motion for summary judgment for failure to exhaust should have been treated as a motion to dismiss); Studio Elec. Technicians Local 728 v. Int'l Photographers of the Motion Picture Indus. Local 659, 598 F.2d 551, 552 (9th Cir. 1979) (explaining that courts should treat these matters as a motion to dismiss even if they are brought by summary judgment).

Accordingly, this Court construes Defendants' Motion for Summary Judgment because of Easter's failure to exhaust as a nonenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b).  See Davitt v. Centric, No. 3:06-cv-00502-HDM(RAM), 2010 U.S. Dist. LEXIS 73430, at *9-10 (D. Nev. May 25, 2010) (recommending that plaintiff's claims be dismissed without prejudice for failure to exhaust after treating motion for summary judgment as motion to dismiss); Boren v. Bocca, No. 3:08-CV-00174-LRH-VPC, 2009 U.S. Dist. LEXIS 124937, at *22-23 (D. Nev. Nov. 13, 2009) (treating summary judgment motion as a Rule 12(b) motion).

### 1.   Plaintiff's Failure to Exhaust

In both their Answer and their current Motion, Perez, Panichello, and Morris assert Easter has not properly exhausted his administrative remedies.  (Answer 4, ECF No. 32; Mot. Summ. J. Attach. #1 Mem. P. & A. 10, ECF No. 52); see Fed. R. Civ. P. 12(h)(2)(A) (providing that if the defense of failure to state a claim is omitted from the initial motion to dismiss, it may be raised in the answer); Fed. R. Civ. P. 7(a); see also Panaro v. City of North Las Vegas, 432 F.3d 949, 952 (9th Cir. 2005) (stating that the affirmative defense of failure to exhaust is waived if the defendant does not raise it); Lira v. Herrera, 427 F.3d 1164, 1171 (9th Cir. 2005) (same).  Although Defendants failed to raise

exhaustion in their initial Motion to Dismiss filed on August 14, 2009, they subsequently plead it in their Answer.  (See Mot. Dismiss Pl.'s Compl. Attach. #1 Mem. P. & A. 3-8, ECF No. 15; Answer 4, ECF No. 32.)  The defense is therefore not waived, and the Court will consider it when ruling on this Motion.  See Fed. R. Civ. P. 12(h)(2)(A); see also Fed. R. Civ. P. 7(a).

To support their assertion that Plaintiff failed to exhaust his nonjudicial remedies, Defendants include in their Motion a statement of facts that they contend are not in dispute.[9]  (Mot. Summ. J. Attach. #2 Separate Statement Undisputed Facts 6, ECF No. 52.)  Defendants state that in Appeal No. RJD-08-00385, Easter alleged that on several occasions he submitted Appeal No. RJD-07-0491, the grievance in which he argued that Defendants' decision to place him in facility four caused him to be assaulted a second time.  (Id. (citing id. Attach. #3 App. Evidence Ex. M, at 77).)  In the 08-00385 grievance, Plaintiff complains that the Appeals Coordinator failed to properly process his 07-0491 grievance challenging the Defendants' decision to rehouse him in yard four. (Id. (citing id. Attach. #3 App. Evidence Ex. M, at 78, Ex. N, at 80-81).)  The Defendants argue:

> Regarding Appeal Log No. RJD-08-00385, D. Foston determined that Plaintiff received a First Level response to Log No. RJD-07-0491 on April 27, 2007, but that he did not appeal the decision to the Second Level until August 15, 2007, which was untimely.  Accordingly, Appeal Log No. RJD-07-0491 was returned to plaintiff on August 16, 2007, and screened out, as Plaintiff exceeded the

---

[9]  Because the Court construes Defendants' Motion as a motion to dismiss with regard to exhaustion, it will consider the events relating to Easter's appeal that Defendants outline in their statement of undisputed facts.  See Wyatt, 315 F.3d at 1119-20 (allowing courts to look beyond the pleadings when resolving exhaustion issues).

prescribed time constraints for requesting Second Level review.

(<u>Id.</u> (citing <u>id.</u> Attach. #3 App. Evidence Ex. M, at 78, Ex. N, at 80-81).)

Defendants maintain that inmates who do not complete every step of the prison's grievance process are barred from bringing a civil rights action. (Mot. Summ. J. Attach. #1 Mem. P. & A. 11, ECF No. 52.)  They submit that Plaintiff never appealed the grievance containing the deliberate indifference allegations to the third level of review or received a decision from the director. (<u>Id.</u> at 12; <u>id.</u> Attach. #2 Separate Statement Undisputed Facts 7 (citing <u>id.</u> Attach. #3 App. Evidence Ex. M, at 79).)  Therefore, Defendants explain, Easter failed to exhaust his administrative remedies. (Mot. Summ. J. Attach. #1 Mem. P. & A. 12, ECF No. 52.)

In response, Plaintiff contends that he has complied with the exhaustion requirements. (Opp'n 5, Mar. 24, 2011, ECF No. 76.)  He refers to his initial civil rights complaint that was filed in January 2007 and ultimately dismissed without prejudice for failure to exhaust because the grievance process was still ongoing. (<u>Id.</u>); <u>see also</u> <u>Easter I</u>, No. 07-cv-00187 L(RBB) (slip op.), ECF No. 32. Easter explains, "[I]t is on file that I was able to come back to court once I finish exhausting my remidies [sic]." (Opp'n 5, Mar. 24, 2011, ECF No. 76.)  He states that he was then able to refile this civil rights action in March 2009. (<u>Id.</u>)

Plaintiff argues that the level three appeals tracking form that was filed as an attachment to Defendants' Motion for Summary Judgment establishes that Easter's appeal was denied at the third level. (<u>Id.</u> (citing <u>id.</u> Ex. F, at 21); <u>see</u> Mot. Summ. J. Attach.

#3 App. Evidence Ex. Q, at 104.)  Plaintiff concedes, however, that
the tracking sheet only identifies the 08-00385 grievance, but he
insists that prison officials never returned his 07-0491 grievance
to him.  (Opp'n 11, Mar. 24, 2011, ECF No. 76.)  The 07-0491
grievance was pending when Easter filed his first complaint; it
dealt with Defendants' decision to reassign him to facility four.
(Id.)  Plaintiff alleges he informed the court in the previous
lawsuit that prison officials were "playing games" with the
processing of grievance 07-0491; Easter argues that the court
ultimately agreed with him.  (Id.)  Plaintiff explains that his
prior lawsuit was dismissed without prejudice until he was able to
finish exhausting the 07-0491 appeal.  (Id.)

     In their Reply, Defendants counter that Plaintiff's "rambling
explanation as to how he allegedly exhausted administrative
remedies" does not rebut their evidence of nonexhaustion.  (Reply
2, Apr. 7, 2011, ECF No. 77.)  They point out that Easter never
addresses the fact that the appeal relating to this incident,
Appeal Log No. RJD-07-0491, was screened out at the second level as
untimely.  (Id. at 2-3.)  Defendants assert that the evidence
Plaintiff attaches to his Opposition — a copy of his third level
appeals history — actually confirms that the 07-0491 appeal was
never exhausted.  (Id. at 3.)

     "Exhaustion of administrative remedies serves two main
purposes."  Woodford, 548 U.S. at 89 (quoting McCarthy v. Madigan,
503 U.S. 140, 145 (1992)).  "First, exhaustion protects
'administrative agency authority'" by giving an agency "'an
opportunity to correct its own mistakes . . . before it is hauled
into federal court'" and by discouraging "'disregard of [the

agency's] procedures.'"   Id. (quoting McCarthy, 503 U.S. at 145).

"Second, exhaustion promotes efficiency . . . . [and] 'may produce

a useful record for subsequent judicial consideration.'"   Id.

(quoting McCarthy, 503 U.S. at 145).   These two purposes are best

served when civil rights plaintiffs are forced to properly exhaust

administrative remedies and comply with the deadlines set by the

administrative agency.   Id. at 95-96.   Therefore, § 1997e(a)'s

exhaustion requirement has not been satisfied if the plaintiff

filed an administrative grievance that was rejected at the second

level of review as untimely.   Id.

The defendant bears the initial burden of proof, in part,

because "'it is considerably easier for a prison administrator to

show a failure to exhaust than it is for a prisoner to demonstrate

exhaustion.'"   Wyatt, 315 F.3d at 1119 (quoting Ray v. Kertes, 285

F.3d 287, 295 (3d Cir. 2002)).   If the defendant has pled and

proved a failure to exhaust, the burden shifts to the plaintiff to

present evidence that he did exhaust administrative remedies.   Ming

Ching Jin v. Hense, No. 1:03-CV-5282-REC-SMS-P, 2005 U.S. Dist.

LEXIS 28083, at *6 (E.D. Cal. Nov. 15, 2005).

        a.   Consideration of public records

Courts may consider "matters of public record" when ruling on

a motion to dismiss, which includes pleadings, orders, and other

papers that are filed with a court.   Coto Settlement v. Eisenberg,

593 F.3d 1031, 1038 (9th Cir. 2010); Lee v. City of Los Angeles,

250 F.3d 668, 688-89 (9th Cir. 2001); Mack v. South Bay Beer

Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986); see Thomas v.

Walt Disney Co., 337 F. App'x 694, 695 (9th Cir. 2009).   But courts

may not take judicial notice of disputed facts stated in those

public records.  <u>Brown</u>, 422 F.3d at 931 n.7 (quoting <u>City of</u>

<u>Sausalito v. O'Neill</u>, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004));

<u>Lee</u>, 250 F.3d at 689-90; <u>Hunt v. Rodriguez</u>, No. CIV S-06-0141 MCE

GGH P, 2009 U.S. Dist. LEXIS 8184, at *8-9 (E.D. Cal. Jan. 23,

2009).

        As discussed above, Easter previously sought relief for these

Defendants' purported deliberate indifference in a separate § 1983

action that was also before this Court.  <u>See</u> <u>Easter I</u>, No. 07-cv-

00187 L(RBB) (complaint), ECF No. 1.  At issue in that lawsuit,

among other things, was whether Easter exhausted Appeal Log No. 07-

0491, the grievance that challenged Defendants' decision to rehouse

him in yard four.  <u>See</u> <u>id.</u>, (motion to dismiss), ECF No. 25,

(report and recommendation), ECF No. 30; <u>id.</u>, slip op., ECF No. 32.

This Court explicitly reconstructed the chronology of events

relating to the submission and processing of this particular

grievance.  <u>Id.</u>, (report and recommendation), ECF No. 30.  The

recommendation was adopted by the district court judge.  <u>Id.</u>, slip

op., ECF No. 32.  Because Easter had filed the lawsuit on January

29, 2007, which was before he submitted the grievance at the first

level on February 7, 2007, the court found that Easter could still

complete the grievance process and therefore dismissed the

complaint without prejudice.  <u>Id.</u> at 2.

        Previous court orders discussing the exhaustion of Easter's

grievance may be considered when ruling on this Motion because the

Complaint refers to the grievance, and the authenticity of court

orders is not questioned.  <u>See</u> <u>Stone v. Writer's Guild of Am. W.,</u>

<u>Inc.</u>, 101 F.3d 1312, 1313-14 (9th Cir. 1996).  In his Complaint,

Plaintiff alleges he exhausted his administrative remedies as to

his Eighth Amendment claim.  (Compl. 6, ECF No. 1.)  He
specifically argues, "I followed the administrative remedies --
completing up to step 3.  No relief obtained, the reason for this
filing."  (Id.)  To support this contention, Plaintiff attaches to
the Complaint the prison's response to the grievance relevant to
the Court's inquiry - Appeal No. RJD-07-0491 - in which Easter
accuses the Defendants of failing to protect him from a substantial
risk of harm.  (See id. Attach. #1, at 11-12.)  Although the first
level appeal response to this grievance was issued by authorities
at Donovan, the form also bears a stamp dated may 25, 2007, from
the Ironwood State Prison ("ISP") appeals office.  (Id.)  Plaintiff
additionally attaches to the Complaint copies of the grievance he
subsequently filed and appealed through the third level - Appeal
No. RJD-08035 - challenging prison officials' failure to process
his earlier 07-0491 grievance.  (Id. at 2-10.)  Therefore, this
Court will consider previous court orders addressing the processing
of Easter's 07-0491 appeal as referred to in the Complaint.  (See
Easter I, No. 07-cv-00187 L(RBB) (report and recommendation), ECF
No. 30; id., slip op., ECF No. 32; see also In re Stac Elecs. Secs.
Litiq., 89 F.3d at 1405 n.4; Fecht, 70 F.3d at 1080 n.1; Cortec
Industries, Inc., 949 F.2d at 47-48.

     Moreover, court orders relating to Easter's initial lawsuit
may also be considered to the extent they are matters of public
record and contain facts that are not in dispute.  See Brown, 422
F.3d at 931 n.7; Lee, 250 F.3d at 689-90; see also Fed. R. Evid.
201(c) ("A court may take judicial notice, whether requested or
not.").  In his Opposition to the Motion for Summary Judgment,
Plaintiff asserts that the Court has already addressed whether his

26

07-0491 grievance has been exhausted.  (<u>See</u> Opp'n 5, 11, Mar. 24, 2011, ECF No. 76); <u>see also</u> <u>Easter I</u>, No. 07-cv-00187 L(RBB) (report and recommendation), ECF No. 30; <u>id.</u>, slip op., ECF No. 32. Plaintiff argues that in his previous lawsuit, he informed the court that prison officials were thwarting the processing of his grievance, and the court agreed.  (Opp'n 11, Mar. 24, 2011, ECF No. 76); <u>see also</u> <u>Easter I</u>, No. 07-cv-00187 L(RBB) (report and recommendation), ECF No. 30; <u>id.</u>, slip op., ECF No. 32.  He reiterates that the initial action was dismissed without prejudice until he could finish exhausting the 07-0491 inmate appeal.  (Opp'n 5, 11, Mar. 24, 2011, ECF No. 76); <u>see also</u> <u>Easter I</u>, No. 07-cv-00187 L(RBB) (slip op.), ECF No. 32.  Plaintiff contends he has still not received a response from the prison regarding his 07-0491 grievance.  (Opp'n 11, Mar. 24, 2011, ECF No. 76.)

Defendants Perez, Panichello, and Morris were defendants in <u>Easter I</u>.  <u>See</u> <u>Easter I</u>, No. 07-cv-00187 L(RBB) (complaint), ECF No. 1.  Although they had the opportunity to do so in their Reply, Defendants do not dispute the chronology of events relating to Plaintiff's grievance previously discussed by the court.  (<u>See</u> Reply 2-3, Apr. 7, 2011, ECF No. 77; <u>see also</u> Opp'n 5, 11, Mar. 24, 2011, ECF No. 76.)  Nor do the Defendants dispute the facts stated in the prior court opinions.  (<u>See</u> Reply 2-3, Apr. 7, 2011, ECF No. 77); <u>see also</u> <u>Easter I</u>, No. 07-cv-00187 L(RBB) (report and recommendation), ECF No. 30; <u>id.</u>, slip op., ECF No. 32.  In fact, Defendants do not even acknowledge Plaintiff's contention that the court has already dealt with the exhaustion issue.  (<u>See</u> Reply 2-3, Apr. 7, 2011, ECF No. 77; <u>see also</u> Opp'n 5, 11, Mar. 24, 2011, ECF No. 76.)

27

In <u>Easter I</u>, this Court concluded that the motion to dismiss for failure to exhaust should be dismissed without prejudice because the defendants "failed to meet their burden of showing that [Easter] can no longer properly exhaust his administrative remedies." <u>Easter I</u>, No. 07-cv-00187 L(RBB) (report and recommendation at 15, ECF No. 30). Defendants Perez, Panichello, and Morris "produced no evidence that Plaintiff's appeal [grievance RJD-07-0491] was rejected as untimely, which would end his right to appeal further." <u>Id.</u> The district court agreed with this assessment. <u>Id.</u>, slip op. at 2, ECF No. 32. Judge Lorenz continued, "As of January 19, 2008, Plaintiff's second level appeal had been pending before the prison authorities at RJ Donovan state prison for some time, however, when he filed his objections to the Report and Recommendation on March 17, 2008, he still had not received a response." <u>Id.</u>

Defendants again contend that Easter has failed to exhaust his Eighth Amendment claim. (Mot. Summ. J. Attach. #1 Mem. P. & A. 5, 8, ECF No. 52.) They maintain that Plaintiff received a first level response to grievance RJD-7-0491 on April 27, 2007, but did not appeal the decision to the second level of review until August 15, 2007. (<u>Id.</u> at 8.) This time, Defendants assert that Easter's grievance was returned to him on August 16, 2007, and screened out as untimely. (<u>Id.</u>)

The Court considered Plaintiff's failure to exhaust in <u>Easter I</u>. The Defendants are not collaterally estopped from relitigating whether Easter exhausted his administrative remedies. "[A] prior judgment does not have preclusive effect unless it is a decision on the merits." <u>Farmer v. McDaniel</u>, 98 F.3d 1548, 1562 (9th Cir.

1996) (Schroeder, J., concurring in part and dissenting in part). In _Wyatt v. Terhune_, 315 F.3d at 1119, the court noted that dismissing a complaint for failure to exhaust administrative remedies is not a judgment on the merits. Consequently, collateral estoppel does not apply.

Because the court opinions relating to Easter's previous § 1983 complaint against these three Defendants are matters of public record and recite evidence that is not disputed by the parties, this Court will consider the opinions. See _Coto Settlement_, 593 F.3d at 1038; _Lee_, 250 F.3d at 689-90; _Ostrander v. HSBC Bank United States, N.A._, No. CIV S-09-1255 JAM EFB PS, 2010 U.S. Dist. LEXIS 2747, at *2-3, n. 2 (E.D. Cal. Jan. 13, 2010) (taking judicial notice of virtually identical complaints that were filed in different court cases); _Khangura v. Am. Mortg. Express_, No. 2:09-cv-0720 LKK JFM PS, 2009 U.S. Dist. LEXIS 47391, at *4 (E.D. Cal. June 5, 2009); _see also_ Fed. R. Evid. 201(c).

### b.   Discussion

Plaintiff's 07-0491 grievance, dated November 29, 2006, was accompanied by an addendum. (Mot. Summ. J. Attach. #3 App. Evidence Ex. N, at 81-83.) There, Easter stated that on August 27, 2006, he was attacked by a group of skin heads; prison officials then rehoused Plaintiff in the same yard as the skin heads, causing him to be attacked a second time by the same gang. (_Id._ at 81, 83.)

The grievance was stamped as received by the Donovan appeal office approximately two months later, on February 7, 2007, and was assigned to Correctional Lieutenant C. P. Franco on February 15, 2007. (_Id._ at 81-82) Thus, the prison's response was due no later

than March 23, 2007, but Lieutenant Franco did not interview Easter until April 11, 2007. (Compl. Attach. #1, at 11, ECF No. 1; Mot. Summ. J. Attach. #3 App. Evidence Ex. N, at 81-82); see Cal. Code Regs. tit. 15, § 3084.8(c)(2). The grievance was partially granted at the first level, and the staff response was dated April 14, 2007, signed April 17, 2007, and "returned" to Easter on April 27, 2007. (Compl. Attach. #1, at 11-12, ECF No. 1; Mot. Summ. J. Attach. #3 App. Evidence Ex. N, at 81-83.)[10]

D. Foston, the current Chief of Inmate Appeals Branch, states that Plaintiff did not appeal the decision to the second level until August 15, 2007; the grievance was therefore screened out as untimely on August 16, 2007. (Mot. Summ. J. Attach. #3 App. Evidence Ex. M, at 78, ECF No. 52 (citing id. Ex. O, at 85-86).) The lapse in time between April 27, 2007, and August 15, 2007, is the crux of Defendants' contention that Easter failed to exhaust because his appeal was properly screened out as untimely.

The chronology of events surrounding the 07-0491 inmate grievance was analyzed in the Court's prior report and recommendation, which was affirmed by the district court. Easter I, No. 07-cv-00187 L(RBB) (report and recommendation), ECF No. 30; id., slip op., ECF No. 32. Easter was transferred from Donovan to Ironwood State Prison on April 18, 2007; he did not receive the prison's first level response on April 27, 2007; that was merely the date the response was "returned." Id. (report and

---

[10]   The Director's Level Appeal Decision indicates that the 07-0491 appeal was returned to Easter on April 27, 2008. (Mot. Summ. J. Attach. #3 App. Evidence Ex. O, at 85, ECF No. 52.) The Court construes this as a typographical error, and finds that the appeal was returned to Plaintiff on April 27, 2007. (Id. Ex. M, at 78, Ex. N, at 82; see Compl. Attach. #1, at 11-12, ECF No. 1.)

recommendation at 14-15), ECF No. 30 ("The evidence supports Plaintiff's contention that he did not receive the first level response until May 22, 2007."); see also id., slip op. at 2, ECF No. 32; (but see Mot. Summ. J. Attach. #3 App. Evidence Ex. M, at 78 (citing id. Ex. O, at 85-86).)  Easter had fifteen working days from May 22, 2007, to appeal to the second level of review.  See Cal. Code Regs. tit. 15, § 3084.6(c).  Plaintiff submitted the second level appeal to the Ironwood State Prison appeals office on May 25, 2007.  Easter I, No. 07-cv-00187 L(RBB), at 14 (report and recommendation), ECF No. 30; see id., slip op., ECF No. 32; (see also Compl. Attach. #1, at 11-12, ECF No. 1 (bearing an ISP appeals office stamp dated May 25, 2007).)

Although the prison had twenty working days to respond to this second level appeal, Easter did not receive the August 4, 2007 response until August 9, 2007, which was well beyond the twenty-day requirement.  See Cal. Code Regs. tit. 15, § 3084.6(b)(3); Easter I, No. 07-cv-00187 L(RBB) (report and recommendation at 15), ECF No. 30; see also id., slip op. at 2, ECF No. 32.  The prison returned Easter's second level appeal to him, not because it was untimely, but because he should have submitted it directly to Donovan.  Easter I, No. 07-cv-00187 L(RBB) (report and recommendation at 15), ECF No. 30; see also id., slip op. at 2, ECF No. 32.

In his Opposition to the Motion to Dismiss in Easter I, Plaintiff submitted a letter from the Ironwood State Prison Appeals Coordinator that stated, "This appeal needs to be forward [sic] directly to RJD from the appellant.  Appeal dated 11/29/06." Easter I, No. 07-cv-00187 L(RBB) (Pl.'s Opp'n 26, ECF No. 26).

Easter's appeal was not rejected.  Section 3084.3 of the Rules and Regulations of the Director of Corporations lists eight reasons an inmate appeal may be rejected.  Cal. Code Regs. title 15, § 3084.3. Exceeding the time limit for submitting the appeal when the appellant had the opportunity to file within the prescribed time constraints is a recognized ground for rejection.  Id.  Submitting the appeal to the wrong institution is not.  Id.

Plaintiff resubmitted the appeal to Donovan.  (Mot. Summ. J. Attach. #3 App. Evidence Ex. M, at 78 (citing id. Ex. O, at 85-86)); see Easter I, No. 07-cv-00187 L(RBB) (report and recommendation at 15), ECF No. 30; see also id., slip op. at 2, ECF No. 32.  The second level appeal was received on August 15, 2007, and screened out as untimely the next day, August 16, 2007.  (Mot. Summ. J. Attach. #3 App. Evidence Ex. M, at 78 (citing id. Ex. O, at 85-86)); see Cal. Code Regs. tit. 15, §§ 3084.3(c)(6), 3084.6(c).

Even with his transfer to ISP and the corresponding delays in the prison's processing and transmission of his grievance, each of Easter's appeals was timely submitted in accordance with title 15, section 3084.6 of the California Code of Regulations.  He received the first level response on May 22, 2007, and appealed the decision three days later; the appeal was returned to him on August 9, 2007, because he should have submitted it directly to Donovan.  Easter I, No. 07-cv-00187 L(RBB) (report and recommendation at 14-15), ECF No. 30; see also id., slip op. at 2, ECF No. 32.  Plaintiff then resubmitted the second level appeal to Donovan, which received it six days later, on August 15, 2007, but the prison screened it out the next day as untimely.  (Mot. Summ. J. Attach. #3 App. Evidence

Ex. M, at 78 (citing id. Ex. O, at 85-86).)  Therefore, Plaintiff's appeal was screened out in error because it was submitted on time.

"[I]mproper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA.  If prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and administrative remedies are therefore plainly unavailable."  Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010).  To fall within this exception, an inmate must demonstrate (1) he actually filed a grievance that, if pursued through all levels, would have properly exhausted the claim he seeks to pursue in federal court, and (2) prison officials screened the grievance for reasons unsupported by their regulations.  Id. at 823-24.

Here, the first requirement is satisfied because the 07-0491 grievance would have properly exhausted Easter's Eighth Amendment if it had been pursued through all levels.  See id.  Defendants do not dispute that this grievance adequately put the prison on notice of the problem Easter now seeks to address.  Id.  The second requirement is also met because prison authorities improperly screened out the 07-0491 grievance.  See id. at 825.  The appeal was deemed untimely based on the mistaken assumption that Easter received the response on April 27, 2007, but did not appeal it until August 15, 2007.  In the meantime, Easter was transferred to ISP; he submitted his appeal there, and then forwarded the appeal to Donovan.  Easter took appropriate steps to exhaust and was prohibited from doing so, not because of his delay, but because of

the prison's mistake.  See Nunez v. Duncan, 591 F.3d 1217, 1224

(9th Cir. 2010).

Defendants have not shown that Plaintiff received notification

that his grievance was screened out.  (See Opp'n 11, Mar. 24, 2011,

ECF No. 76.)  Despite raising and briefing this exact issue in

their motion to dismiss in Easter I, this is the first time the

Defendants have asserted that the second level grievance was

screened out as untimely on August 16, 2007.  Easter I, No. 07-cv-

00187 L(RBB) (report and recommendation at 15), ECF No. 30

("Although the Defendants filed their Reply to Plaintiff's

Opposition on October 22, 2007, they have produced no evidence that

Plaintiff's appeal was rejected as untimely, which would end his

right to appeal further."); see also id., slip op. at 2, ECF No. 32

("The Magistrate Judge found that the prison authorities had not at

any level or at any time rejected Plaintiff's grievance as

untimely.").  At the time of Judge Lorenz's opinion, dated November

20, 2008, there was no evidence that Easter had received any

response from Donovan officials regarding his appeal.  Easter I,

No. 07-cv-00187 L(RBB),  slip op. at 2, ECF No. 32 ("[T]he court is

troubled by the prison authorities' unresponsiveness in processing

Plaintiff's grievance after February 7, 2007.").

Plaintiff continues to assert he never received a response to

his second level appeal.  (Opp'n 11, Mar. 24, 2011, ECF No. 76

("[T]hey never return[ed] my other appeal Log # 07-491."); see also

Wyatt, 315 F.3d at 1119 (citing law indicating that courts should

liberally construe pro se litigants' pleadings, especially

regarding issues involving technical requirements).  In fact, on

February 6, 2008, Plaintiff filed a second appeal complaining of

the prison's processing of his initial grievance and inquiring
about its status.  (Compl. Attach. #1, at 2-10, ECF No. 1; Mot.
Summ. J. Attach. #2 Separate Statement Undisputed Facts 6, ECF No.
52; id. Attach. #3 App. Evidence Ex. M, at 78, Ex. O, at 85.)

    The Defendants do not provide the Court with a copy of the
prison's response to Easter's second level appeal in #RJD-07-0491,
screening it out as untimely.  Cal. Code Regs. tit. 15, § 3084.3(d)
(stating that when rejecting an appeal, the appeals coordinator
must issue a written rejection explaining why the appeal is
unacceptable.)  The only evidence that this screened-out grievance
was returned to Plaintiff consists of one sentence in the responses
to the subsequent 08-00385 grievance.  Without tracing the
chronology of Appeal #RJD 07-0491, prison authorities simply
concluded that the second level appeal was submitted on August 15,
2007, and returned to Easter.  (See Compl. Attach. #1, at 4
(informal response to RJD 08-385); id. at 9-10 (second level appeal
response to RJD 08-0385); (Mot. Summ. J. Attach. #3 App. Evidence
Ex. M, at 78, Ex. O, at 85 (director's level appeal response to RJD
08-0385).  The director's level decision in 08-0385 states that a
review was conducted, and it was determined that Easter's appeal
rights were not violated.  (Id. Ex. O, at 85.)  The Defendants have
submitted minimal evidence of the screened appeal, and the evidence
is insufficient to meet their burden of proving nonexhaustion.
Wyatt, 315 F.3d at 1119.

    Several courts have found exceptions to the PLRA's exhaustion
requirement in light of the Ninth Circuit's decision in Ngo v.
Woodford.  Nunez, 591 F.3d at 1224.  The PLRA only requires that a
prisoner exhaust administrative remedies that "are available."  42

U.S.C. 1997e(a).  When circumstances render an inmate's remedies "effectively unavailable," he is excused from the exhaustion requirement.  <u>Nunez</u>, 591 F.3d at 1226; <u>see id.</u> at 1224 (quoting <u>Turner v. Burnside</u>, 541 F.3d 1077, 1085 (11th Cir. 2008); <u>see also Viet Mike Ngo v. Woodford</u>, 539 F.3d 1108, 1110 (9th Cir. 2008)) (suggesting that an inmate can be excused from any failure to exhaust remedies when prison staff obstructs the grievance process).  The burden rests on the defendants to show what remedies were indeed available to the inmate and how he failed to take advantage of the remedies.  <u>Williams v. Cate</u>, No. 1:09-cv-00468 OWW JLT (PC), 2011 U.S. Dist. LEXIS 30834, at *6 (E.D. Cal. Mar. 24, 2011).

The Defendants have not provided the Court with proof that Easter received the second level appeal response from the prison on August 16, 2007.  They do not address Easter's contention that he never received the screened-out second level appeal, and they provide insufficient proof that it was returned to Plaintiff. (Opp'n 11, Mar. 24, 2011, ECF No. 76; Reply 2-3, Apr. 7, 2011, ECF No. 77; <u>see</u> <u>Burrows v. Gifford</u>, No. 1:06-CV-0602-AWI-WMW-PC, 2007 U.S. Dist. LEXIS 72077, at *6-8 (E.D. Cal. Sept. 27, 2007) (finding defendants did not meet their burden of proving nonexhaustion when they failed to rebut plaintiff's claim that officials did not properly process his appeal).

The Defendants have not carried their burden of proving nonexhaustion.  <u>Wyatt</u>, 315 F.3d at 1119; <u>Ming Chin Jin</u>, 2005 U.S. Dist. LEXIS 28083, at *6; <u>see</u> <u>Parks Sch. of Bus., Inc. v. Symington</u>, 51 F.3d 1480, 1484 (9th Cir. 1995) (construing the complaint in the light most favorable to the plaintiff).  For all

1  of these reasons, Defendants' request that the Court dismiss
2  Plaintiff's deliberate indifference claims for failure to exhaust
3  should be **DENIED**.

4                 **V.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

5       Perez, Panichello, and Morris also move for summary judgment
6  on the merits.   The Defendants assert Plaintiff's Eighth Amendment
7  claim against each of them fails as a matter of law because each
8  was unaware that Plaintiff would be assaulted in the second prison
9  riot.  (Mot. Summ. J. 2, ECF No. 52; <u>id.</u> Attach. #1 Mem. P. & A.
10 5.)  Defendants also argue that they are entitled to qualified
11 immunity because that their actions were made in good faith and
12 with a reasonable belief that they were lawful.  (Mot. Summ. J. 2,
13 ECF No. 52; <u>id.</u> Attach. #1 Mem. P. & A. 5.)

14      Most of Plaintiff's original claims did not survive
15 Defendants' Motion to Dismiss.  (<u>See</u> Order Adopting Report &
16 Recommendation 2, ECF No. 30; <u>see also</u> Report & Recommendation 24-
17 25, ECF No. 29.)  Therefore, Plaintiff may only pursue his Eighth
18 Amendment claim against Perez, Panichello, and Morris for failing
19 to protect him from harm, and Easter may only seek compensatory and
20 punitive damages against Defendants in their individual capacities.
21 (<u>See</u> Order Adopting Report & Recommendation 2-3, ECF No. 30; <u>see</u>
22 <u>also</u> Report & Recommendation 10, 15, 24, ECF No. 29.)  The
23 Plaintiffs's other claims and requests for relief have been
24 dismissed.  (Order Adopting Report & Recommendation 2-3, ECF No.
25 30; <u>see also</u> Report & Recommendation 24-25, ECF No. 29.)

26 **A.   The Plaintiff's Request for Additional Discovery**

27      As an initial matter, the Plaintiff opposes the Motion, in
28 part, with a claim that he needs additional discovery.   In its June

                                 37                    09cv555 LAB(RBB)

9, 2010 Case Management Conference Order Regulating Discovery and Other Pretrial Proceedings, this Court ordered that all discovery shall be completed by December 6, 2010 [ECF No. 35]. Although this deadline has passed, Easter argues intermittently throughout his opposition papers that he should be given time to take additional discovery. (See Opp'n 1-2, Mar. 2, 2011, ECF No. 66; Opp'n 3, Mar. 7, 2011, ECF No. 73; Opp'n 2, Mar. 24, 2011, ECF No. 76.) For example, Plaintiff briefly contends that the depositions of other officers would support the facts he has alleged. (Opp'n 2, Mar. 24, 2011, ECF No. 76.) Easter appears to assert that he communicated his safety concerns to Defendant Morris by complaining to the housing officer Morris sent to talk to Plaintiff; Easter explains that the "building 16 officer" would testify that this occurred. (Id. at 8.) Further, Plaintiff alleges he needs to obtain the remaining facts from Defendants, like "154, video's tape's [sic] and some officer's statements" that were "hard for [him] to get" because he is incarcerated. (Id. at 11.)

When a nonmoving party requests additional discovery to oppose summary judgment, it bears the burden of showing that "additional discovery would uncover specific facts which would preclude summary judgment," and that the evidence sought indeed exists. Maljack Prods., Inc. v. Goodtimes Home Video Corp., 81 F.3d 881, 888 (9th Cir. 1996) (under Rule 56(f)); see Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1991); Garrett v. City and County of San Francisco, 818 F.2d 1515, 1518 (9th Cir. 1987). The plaintiff must do more than make vague assertions that additional discovery would reveal "needed, but unspecified, facts." In re Hanford Nuclear Reservation Litig., 894 F. Supp. 1436, 1452 (E.D. Wash. 1995).

Easter has not shown that any of the mentioned discovery would uncover specific facts precluding summary judgment. <u>See</u> Fed. R. Civ. P. 56(d); <u>Maljack Prods., Inc.</u>, 81 F.3d at 888; <u>In re Hanford Nuclear Reservation Litig.</u>, 894 F. Supp. at 1452. Nor has the Plaintiff established good cause for amending the current scheduling order to reopen discovery. (<u>See</u> Case Management Conference Order 1, 6, ECF No. 35 ("The dates and times set forth herein will not be modified except for good cause shown.").) Easter was given six months to obtain discovery in support of his case. (<u>See</u> <u>id.</u> at 1.)

The nonmoving party seeking additional time to obtain discovery to oppose summary judgment must show that it has been diligent in pursuing discovery; it must specify the facts sought and explain their reference; and it must explain why, despite its diligence, the facts are currently unavailable. <u>See</u> 11 James Wm. Moore, et al., <u>Moore's Federal Practice</u> § 56.100[4], at 56-262 (3d ed. 2011) (discussing relief under Rule 56(d)). Easter's request for additional discovery pursuant to Rule 56(d) falls short and is **DENIED.** <u>See also</u> S.D. Cal. Civ. L.R. 16.1(b) (requiring that pro se plaintiffs proceed with diligence and take necessary steps to prepare their cases). The Court will consider Defendants' Motion for Summary Judgment based on the record currently before it.

**B.   <u>Eighth Amendment Claim:   Failure to Protect</u>**

"[T]he treatment a prisoner receives and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993). The Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" <u>Id.</u> at 33 (quoting <u>Deshaney v. Winnebago County Dep't of Soc. Servs.</u>, 489 U.S.

189, 200 (1989)).  Therefore, a plaintiff has a right to be protected from violence while in custody.  Farmer v. Brennan, 511 U.S. 825, 833 (1994); Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).  "Prison officials must take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray, 682 F.2d 1237, 1250 (9th Cir. 1982).  When the state takes a person into custody, the Constitution imposes a duty to assume some responsibility for his safety and well-being.  Deshaney, 489 U.S. at 1005.

To establish an Eighth Amendment violation, a plaintiff must show that the defendant acted with deliberate indifference to a substantial risk of serious harm to the prisoner's safety.  Farmer, 511 U.S. at 834; see Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995); Madrid v. Gomez, 889 F. Supp. 1146, 1267-68 (N.D. Cal. 1995). The prison official is only liable when two requirements are met; one is objective, and the other is subjective.  Farmer, 511 U.S. at 834; see Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009). First, the purported violation must be objectively "sufficiently serious." Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must subjectively "know of and disregard an excessive risk to inmate health or safety." Id. at 837.

In their Motion for Summary Judgment, the Defendants contend they were not aware of any threat to Easter's safety because there was no evidence demonstrating he was at risk of being attacked, and Plaintiff did not put Defendants on notice of any safety concerns. (Mot. Summ. J. Attach. #1 Mem. P. & A. 12, ECF No. 52.)  Assuming they knew that Easter had been previously attacked in yard four, the

1  Defendants argue, they would not be precluded from housing Plaintiff
2  in yard four in the future unless they knew the identities of
3  Easter's specific enemies.  (Id. at 14.)

4      1.    **Objective Requirement:  Sufficiently Serious Deprivation**

5      To establish an Eighth Amendment claim, the alleged deprivation
6  must be "objectively, 'sufficiently serious.'"  Farmer, 511 U.S. at
7  834 (quoting Wilson, 501 U.S. at 298).  In cases alleging prison
8  authorities' failure to prevent harm, the inmate may satisfy the
9  "sufficiently serious" requirement by showing that "he is
10 incarcerated under conditions posing a substantial risk of serious
11 harm" to him.  Id.  Courts must consider the seriousness of the
12 potential harm and whether society deems the risk to be so grave
13 that it violates standards of decency.  Helling, 509 U.S. at 36; see
14 Hudson v. McMillian, 503 U.S. 1, 8 (1992).

15     Defendants Perez, Panichello, and Morris do not explicitly
16 address this standard.  Instead, they repeatedly assert they were
17 not "deliberately indifferent" because there was "no identifiable
18 threat to plaintiff's safety," which is, in fact, responsive to the
19 subjective element.  (Mot. Summ. J. Attach. #1 Mem. P. & A. 12-16,
20 ECF No. 52); see Farmer, 511 U.S. at 834, 837 (explaining that an
21 inmate must first show the purported violation was objectively
22 "sufficiently serious," and then must demonstrate that the prison
23 officials were subjectively "deliberately indifferent").

24     The Defendants argue that they lacked the requisite subjective
25 intent.  (See Mot. Summ. J. Attach. #1 Mem. P. & A. 12, 14-16, ECF
26 No. 52 ("Defendants were not deliberately indifferent to Plaintiff's
27 safety."); see also id. at 15 ("[The record] does not demonstrate
28 that the defendants were aware of an identifiable risk to

41

1  plaintiff's safety."); <u>id.</u> at 16 (citing <u>Del Raine v. Williford</u>, 32
2  F.3d 1024 (7th Cir. 1994), to argue that "the subjective component
3  is not established and the suit fails."); <u>id.</u> at 20 ("Further,
4  defendants were not deliberately indifferent to plaintiff's safety
5  by transferring him to facility in which he had no enemies or
6  identifiable safety concerns.").)

7      Nonetheless, it could be inferred that Defendants are
8  suggesting that because each of them was unaware Easter would be
9  assaulted in the second riot, Plaintiff did not face a substantial
10 risk of harm.  (<u>See</u> Mot. Summ. J. Attach. #1 Mem. P. & A. 12-16, ECF
11 No. 52); <u>but see</u> <u>Broadway</u>, 2009 U.S. Dist. LEXIS 21132, at *15-16.
12 Regardless of the manner in which the Court construes Defendants'
13 arguments, a genuine issue of fact exists as to the objective
14 element of the Eighth Amendment inquiry.

15     The Defendants argue at length that there was no "identifiable"
16 threat to Easter's safety in yard four on November 14, 2006.  (Mot.
17 Summ. J. Attach. #1 Mem. P. & A. 5, 12, ECF No. 52.)  They submit
18 that Plaintiff did not participate in the August 27, 2006 riot.
19 (<u>Id.</u>; <u>see</u> Reply 3, Apr. 7, 2011, ECF No. 77.)  Defendants rely on
20 the medical examiner's conclusion that Plaintiff had "no seen
21 injury" after the fight, as well as the Rules Violation Report
22 showing Plaintiff was ultimately disciplined for "behavior which may
23 lead to violence."  (Mot. Summ. J. Attach. #1 Mem. P. & A. 5, 12,
24 ECF No. 52 (citing <u>id.</u> Attach. #2 Separate Statement Undisputed
25 Facts 2); <u>see</u> Reply 3, Apr. 7, 2011, ECF No. 77 (citing <u>id.</u> Attach.
26 #1 Decl. Cunningham 3).)  Defendants further maintain that Plaintiff
27 had no enemies on September 28, 2006, when his enemy list was
28 updated before the November 17, 2006 riot.  (Mot. Summ. J. Attach.

1  #1 Mem. P. & A. 5, 12, ECF No. 52.)  Also, the classification

2  committee evaluated Easter on September 29, 2006, to determine

3  whether he should be released from AS back to the general prison

4  population, and Easter did not mention any safety concerns about

5  facility four.  (Id. at 14-15 (citing id. Attach. #2 Separate

6  Statement Undisputed Facts 3).)  Defendants argue that inmate Hill,

7  the prisoner who stabbed Plaintiff during the second riot, was not

8  involved in the first fight.  (Id. at 8-9 (citing id. Attach. #2

9  Separate Statement Undisputed Facts 5).)  Because neither Plaintiff

10  nor Hill participated in the August 2006 riot, and Hill was never an

11  identified as an enemy of Easter's, Defendants state there was no

12  known threat to Plaintiff's safety in yard four.  (Id. (citing id.

13  Attach. #2 Separate Statement Undisputed Facts 2, 5-6).)

14      In his Opposition, Plaintiff essentially contends that his

15  placement back to yard four subjected him to a substantial risk of

16  harm.  Farmer, 511 U.S. at 834; see Thomas v. Ponder, 611 F.3d 1144,

17  1150 (9th Cir. 2010) (construing the filings of pro se inmates

18  liberally).  Easter asserts he was attacked by approximately fifteen

19  skin heads during the August 27, 2006 riot.  (Compl. 2, 5, ECF No.

20  1; Opp'n 1, 5-6, Apr. 1, 2011, ECF No. 76.)  The medical report

21  reveals that Plaintiff was "rushed by the white race," and the

22  chrono indicates he was sent to administrative segregation for

23  "participating in a riot."  (Opp'n 1, 5-6, Apr. 1, 2011, ECF No. 76

24  (citing id. Ex. A, at 13, Ex. B, at 15); see Mot. Summ. J. Attach.

25  #3 App. Evidence Ex. B, at 6, Ex. E, at 12, ECF No. 52.)  The

26  classification committee sent Easter and the other African-American

27  inmates to AS because they were "involved" in the riot; thirty days

28  later, they were released from AS to yard two due to security

43

1    reasons, as the Caucasian prisoners were still in yard four.  (Opp'n

2    6, Mar. 24, 2011, ECF No. 76; see also Mot. Summ. J. Attach. #3 App.

3    Evidence Ex. P, at 100, ECF No. 52.)[11]  Plaintiff maintains that his

4    CDC 128-B chrono reveals that he was "targeted to be hit" in the

5    November riot due to his participation in the August 2006 riot.

6    (Opp'n 6, Mar. 24, 2011, ECF No. 76 (citing id. Ex. C, at 17); see

7    Mot. Summ. J. Attach. #3 App. Evidence Ex. H, at 45, ECF No. 52.)

8         Easter argues that it would have been impossible for him to

9    have specifically identified inmate Hill as a threat before the

10   November 2006 riot because he did not know who Hill was until Hill

11   stabbed him.  (Opp'n 8-9, Apr. 1, 2011, ECF No. 76.)  Therefore,

12   Plaintiff submits that he had no way of alerting officials that Hill

13   posed a threat before the second riot; he was concerned for his

14   safety because of the general "ties" the gang had.  (Id.)  "It was

15   'no coincidence'" that once [Plaintiff] was moved back into building

16   seventeen of yard four, he was attacked again by members from the

17   same gang.  (Id. at 10.)

18        The parties dispute whether Plaintiff participated in the first

19   riot.  According to the medical report, Easter "stated he was

20   talking to the sergeant, then they were rushed by the white race."

21   (Id. Ex. A, at 13.)  The CDC-128G chrono sheet indicates Easter was

22   "placed in AS on 8-27-06 for security concerns, due to him

23   participating in a riot."  (Id. Ex. B, at 15.)  The chrono, which

24   was prepared before Easter's disciplinary hearing, also states his

25   

26        [11]  On several occasions throughout his Opposition, Easter
     references the events as they apply to him and to other African-
27   American prisoners.  To the extent Plaintiff attempts to assert the
     legal rights of these third-party inmates, he lacks standing to do
     so.  See Powers v. Ohio, 499 U.S. 400, 410-11 (1991).  The Court
28   will only consider Easter's allegations as they apply to him as an
     individual.  See id.

1  offense of "Participation in a Riot" is pending adjudication. (<u>Id.</u>)

2  One incident report shows Plaintiff was a "suspect" in the riot but

3  sustained no injuries, and another report lists Plaintiff as a

4  "witness." (Compl. 44, 57, ECF No. 1; Mot. Summ. J. Attach. #3 App.

5  Evidence Ex. I, at 49, ECF No. 52.) A reporting officer wrote,

6  "After 'Code 4' was established I escorted [Easter] to Facility #4

7  Dining Hall for a medical evaluation." (Mot. Summ. J. Attach. #3

8  App. Evidence Ex. I, at 57, ECF No. 52.) Easter was placed in

9  administrative segregation because he "was involved in a riot with

10 weapon requiring the use of force on the Facility IV Yard," and

11 Plaintiff was a threat to the safety of other inmates and to prison

12 security. (<u>Id.</u> Ex. C, at 8.)

13     There is some evidence that Plaintiff merely attempted to

14 participate in the riot, but was not involved. (Mot. Summ. J.

15 Attach. #2 Separate Statement Undisputed Facts 1, ECF No. 52.) The

16 Rules Violation Report attached to Defendants' Motion states that

17 Easter "attempted to get involved, but decided to get down after the

18 37MM was used." (<u>Id.</u> Attach. #3 App. Evidence Ex. A, at 4, ECF No.

19 52.) The medical report indicates that Easter was not injured.

20 (<u>Id.</u> Ex. B, at 6.) Defendant Morris acknowledges, "Plaintiff was

21 found guilty of 'behavior which may lead to violence.'" (<u>Id.</u> Ex. J,

22 at 64.)

23     The Defendants submitted new material, the September 16, 2006

24 Rules Violation Report, with their Reply. "It is improper for a

25 moving party to introduce new facts or different legal arguments in

26 the reply brief than those presented in the moving papers." <u>United</u>

27 <u>States ex rel. Giles v. Sardie</u>, 191 F. Supp. 2d 1117, 1127 (C.D.

28 Cal. 2000) (citing <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 894-

1  95 (1990)); see Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007)

2  ("The district court need not consider arguments raised for the

3  first time in a reply brief.").  Further, Civil Local Rule 7.1

4  provides, "[C]opies of all documentary evidence which the movant

5  intends to submit in support of the motion, or other request for

6  ruling by the court, must be served and filed with the notice of

7  motion."  S.D. Cal. Civ. L.R. 7.1(f)(2)(a).  Therefore, Defendants

8  improperly submitted new evidence in their Reply, depriving

9  Plaintiff of his opportunity to respond.  The report, however, does

10 not prejudice Easter.

11     The parties also dispute the extent of prisoner Hill's

12 involvement in the first riot, if any.  Easter testified that

13 although he did not know their specific names, some of the inmates

14 were involved in both riots.  (Mot. Summ. J. Attach. #3 App.

15 Evidence Ex. P, at 92.)  ("You have to go through the paperwork to

16 find out these individuals, but there was some that was involved in

17 the first [riot], the reason why the second [riot] happened."  (Id.)

18 Plaintiff further testified that inmate Hill could have been

19 involved in the first riot, but he was not sure because he did not

20 know who everyone was.  (Id. at 94.)  Defendants, on the other hand,

21 cite to the crime incident reports for both riots and to Defendant

22 Morris's Declaration to argue Hill was not involved in the first

23 fight.  (Mot. Summ. J. Attach. #2 Separate Statement Undisputed

24 Facts 5, ECF No. 52.)

25     Although the August 27, 2006 incident report does not mention

26 inmate Hill, the November 14, 2006 report lists Hill as a

27 participating prisoner and reveals that he did not arrive at Donovan

28 until October 31, 2006.  (See Mot. Summ. J. Attach. #3 App. Evidence

Ex. G, at 18, 22, Ex. I, at 47-61, ECF No. 52.)  Based on this evidence, there is no issue of material fact as to whether Hill was involved in the first riot.  The record shows he was not housed at Donovan on August 27, 2005, and Easter presents no evidence to the contrary.  (Id.)

    Two of Plaintiff's subsequently-identified enemies were involved in both riots.  The Defendants allege Easter's enemy list was updated "on the date of the incident," November 14, 2006, and again on April 16, 2007, yet they only provide the Court with the April 16, 2007 "safety/enemy concerns" general chrono.  (Id. Attach. #1 Mem. P. & A. 5 (citing id. Attach. #3 App. Evidence Ex. H, at 45).)  The chrono reveals the names of fifteen Caucasian inmates who posed a threat to Easter's safety.  (Mot. Summ. J. Attach. #3 App. Evidence Ex. H, at 45, ECF No. 52.)  The evidence demonstrates that enemy-inmates Bondurant, T. (V-40228) and Morain, Greggory (T-76999) were involved in both riots.  (Id.; compare id. Ex. I, at 50, 54 (showing that Bondurant and Morain, or "Morgan," participated in the August 27, 2006 riot), with id. Ex. G, at 24, 27 (reflecting Bondurant's and Morain's involvement in the November 14, 2006 riot); see also Compl. 44, ECF No. 1.)

    Easter repeatedly contends he feared members of the Caucasian prison gang, the skin heads, that purportedly attacked him on both occasions.  (Compl. 2, ECF No. 1; Mot. Summ. J. Attach. #3 App. Evidence Ex. N, at 81, 83, ECF No. 52; Opp'n 1, 8-10, Apr. 1, 2011, ECF No. 76 (stating that members of the skin heads hate "torch blacks"); contra Mot. Summ. J. Attach. #1 Mem. P. & A. 15-16, ECF No. 52 (asserting that Plaintiff states a general concern for inmates of the white race at large).)  In his grievance, the

47

1 Plaintiff stated that on August 27, 2006, he was attacked by twenty-
2 five to thirty skin heads, and on November 14, 2006, fifteen skin
3 heads rushed him again with knives. (Mot. Summ. J. Attach. #3 App.
4 Evidence Ex. N, at 81, 83, ECF No. 52.) Based on officers' reports
5 attached to the Complaint, there were approximately thirty Caucasian
6 inmates involved in the first riot and fifteen Caucasian prisoners
7 in the second riot. (See Compl. 36, 38-39, 42, 44, 63, 68, 95, ECF
8 No. 1.) Moreover, prison officials subsequently noted on April 16,
9 2007, that Easter was "targeted to be hit" in the November 17, 2006
10 riot and that numerous Caucasian inmates posed serious risks of
11 threat to Plaintiff's safety. (Mot. Summ. J. Attach. #3 App.
12 Evidence Ex. H, at 45, ECF No. 52.) "Only I/M Hill . . . was
13 identified as the assailant in the stabbing; however, other white
14 inmates were also involved and care should be taken when placing
15 them in the facility yard . . . ." (Id.)

16    The record establishes that there was a large number of white
17 and black prisoners fighting, the riots were racially-motivated, and
18 the participating prisoners were potential gang members. A trier of
19 fact could reasonably find that more than just inmate Hill posed a
20 threat to Easter's safety. (See Mot. Summ. J. Attach. #3 App.
21 Evidence Ex. H, at 45, ECF No. 52.) Viewing the evidence in the
22 light most favorable to Plaintiff, an issue of fact exists as to
23 whether Easter was confined under conditions that posed a
24 "substantial risk of serious harm." See Thomas, 611 F.3d at 1150
25 ("[C]ourts should construe liberally motion papers and pleadings
26 filed by pro se inmates and should avoid applying summary judgment
27 rules strictly."); Olsen v. Idaho State Bd. of Med., 363 F.3d 916,
28 922 (9th Cir. 2004).

## 2.   Subjective Requirement:  Deliberate Indifference

After an inmate has shown a triable issue as to whether he suffered a deprivation that was objectively, "sufficiently serious," he must also establish a triable issue regarding whether the prison officials had a "sufficiently culpable state of mind," acting with deliberate indifference.  Farmer, 511 U.S. at 834; see Thomas, 611 F.3d at 1151.  "[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  Farmer, 511 U.S. at 835. Liability materializes if the defendant knew the inmate faced a risk of harm and disregarded that risk by failing to take reasonable measures to abate it.  Id. at 847.  Therefore, demonstrating subjective deliberate indifference involves a two-part inquiry:  (1) whether the defendant was subjectively aware of a risk of serious harm to the prisoner's safety, and (2) whether the official had a reasonable justification for the deprivation.  Thomas, 611 F.3d at 1150-51.

"First, the inmate must show that the prison officials were aware of a 'substantial risk of serious harm' to an inmate's health or safety.  Id. (citing Farmer, 511 U.S. at 837) (footnote omitted). This may be satisfied if the prisoner establishes that the risk posed by the violation was "obvious."  Id.  A plaintiff need not show that an "individual prison official had specific knowledge that harsh treatment of a particular inmate, in particular circumstances, would have a certain outcome."  Id.  "Rather, [courts] measure what is 'obvious' in light of reason and the basic general knowledge that a prison official may be presumed to have obtained regarding the

49

type of deprivation involved." Id. at 1151 (citing Farmer, 511 U.S. at 842). For example, if a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and the defendant "had been exposed to information concerning the risk and thus 'must have known' about it," a trier of fact could find defendant had actual knowledge of the risk. Farmer, 511 U.S. at 842 (quotations omitted); see also Thomas, 611 F.3d at 1151. Housing an African-American inmate in a yard with Caucasian skin heads within weeks of a race riot is one example of an "obvious" risk. Whether a defendant had the requisite knowledge is a question of fact subject to substantiation in the usual ways, including inferences drawn from circumstantial evidence. Farmer, 511 U.S. at 842.

"Second, the inmate must show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." Thomas, 611 F.3d at 1150-51 (citing Farmer, 511 U.S. at 844). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844.

Captain Morris explains that officials may learn of safety threats if the prisoner communicates to staff the identity of the specific individual who poses a threat and explains why the inmate is believed to be a concern; officials then document the enemy in a "CDC Form 128B" chrono. (Mot. Summ. J. Attach. #2 Separate Statement Undisputed Facts 2, ECF No. 52 (citing id. Attach. #3 App. Evidence Ex. J Decl. Morris 64-65).) Morris contends that a prisoner may not place an entire ethnicity on an enemy list. (Id.

Attach. #3 App. Evidence Ex. J Decl. Morris 65.)  An enemy can be
identified if a prisoner is involved in a fight and staff can
determine which individuals were involved.  (Mot. Summ. J. Attach.
#2 Separate Statement Undisputed Facts 3, ECF No. 52.)  The
Defendants allege that because Plaintiff did not participate in the
August 27, 2006 riot, they would have no knowledge of a risk unless
Easter directly communicated to them that a certain prisoner posed a
threat to Plaintiff's safety, but he never did.  (Id. (citing id.
Attach. #3 App. Evidence Ex. J. Decl. Morris 64-55).)

As discussed above, at a minimum, the record contains facts
presenting a genuine issue of fact as to whether Easter participated
in the August 2006 riot.  Defendants' argument that the only way
they could have known of a threat to Easter is if he directly
communicated to them a specific risk of harm is not compelling.
(Id. (describing that an enemy can be identified if the prisoner is
involved in a mutual combat or other incident).)

At his deposition, the Plaintiff testified that he was released
from administrative segregation directly to prison yard two, and
approximately one month later, he was unexpectedly transferred to
yard four and asked Captain Morris about the transfer.  (Opp'n 6,
Apr. 1, 2011, ECF No. 66; Mot. Summ. J. Attach. #3 App. Evidence Ex.
P, at 97, ECF No. 52.)  Easter argues there was no need to express
his safety concerns about facility four to prison officials because
he was not released from administrative segregation to yard four,
where he had enemies; rather, he was released to yard two, where he
did not have any enemies.  (Opp'n 6, Apr. 1, 2011, ECF No. 76.)
Easter urges that he did his best to informally communicate his
worries to prison staff about being on yard four, but they showed no

concern.  (See id. at 8.)  Plaintiff claims he was moved back to the yard that housed members of the skin heads, a well-known, dangerous prison gang that hated "torch blacks."  (See id.)

According to Defendant Morris, Easter was initially released from administrative segregation on yard two; Officer Perez acknowledges that Easter was transferred from facility two to the reception center of facility four in October 2006, and she assigned him to building seventeen shortly thereafter.  (Mot. Summ. J. Attach. #2 Separate Statement Undisputed Facts 3, ECF No. 52; see id. Attach. #3 App. Evidence Ex. J Decl. Morris 65, Ex. L Decl. Perez 73.)

The Defendants claim that prison policies require inmates to identify their specific enemies and explain why they are a threat before officials will add them to an enemy list.  (Mot. Summ. J. Attach. #3 App. Evidence Ex. J Decl. Morris 64-65, ECF No. 52.) Defendants also allege Donovan polices prohibit prisoners from placing all inmates of a certain ethnicity or race on his enemy list, because "it would be impracticable to segregate the prison by ethnicity."  (Id. at 65.)  Other than Morris's Declaration, however, the Defendants submit no evidence of these practices.

The Notice of Critical Case Information -- Safety of Persons, describes the purpose of the document.

> This non-confidential form is used to document [inmates] or potential inmates who should be kept separate and [inmates] suspected of affiliation with a prison gang or disruptive group.  If an [inmate] is identified with a prison gang, a Notice of Critical Information -- Prison Gang Identification (Form CDC812-A) shall also be completed.  A form CDC 812-B shall be completed on Disruptive Group Affiliates.

(Id. Ex. D, at 10) (emphasis added).  As noted on December 22, 2006, the form describes Plaintiff's "suspected gang affiliation" as a

1 "member" of the "59 Brim (Blood) prison gang."   (Id.)   The "primary
2 supporting documentation" for Easter's supposed prison gang
3 association was a "POR dtd 6-26-06 pg 12."   (Id.)

4     Even if Defendants' assertion that after a race riot, the
5 prison could not segregate Easter from Caucasian prisoners was a
6 defense, the Complaint is more specific than Defendants suggest.
7 Easter alleges he was attacked by twenty-five to thirty skin heads
8 in the first riot and fifteen skin heads in the second riot, and he
9 contends both fights occurred in prison yard four.  (Compl. 2, ECF
10 No. 1; Opp'n 1, 8-10, Apr. 1, 2011, ECF No. 76; see also Mot. Summ.
11 J. Attach. #3 App. Evidence Ex. N, at 81, 83, Ex. D, at 10.)

12     Plaintiff repeatedly references the "skin heads," a gang that
13 is associated with condoning racially-motivated, white power
14 beliefs.  (See Compl. 2, ECF No. 1; Mot. Summ. J. Attach. #3 App.
15 Evidence Ex. N, at 81, 83, ECF No. 52; Opp'n 1, 8-10, Apr. 1, 2011,
16 ECF No. 76; see also Opp'n 8, Apr. 1, 2011 (describing that members
17 of the skin head gang hate "torch blacks"), ECF No. 76.   The
18 Plaintiff's statements are not that the entire Caucasian race was an
19 enemy, just members of the skin heads.

20     The Court will consider the subjective component of the Eighth
21 Amendment inquiry as it applies to each Defendant separately.   See
22 Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988) ("The prisoner
23 must set forth specific facts as to each individual defendant's
24 deliberate indifference.").

25          a.   Officer Perez

26     The Plaintiff alleges Defendant Perez made the decision to
27 transfer Easter from facility two back to facility four even though
28 she could have assigned him to any yard, and his previous fight with

skin heads in yard four was documented in his file.  (Compl. 2, ECF
No. 1; see Opp'n 2, Mar. 11, 2011, ECF No. 73; Opp'n 7, Mar. 24,
2011, ECF No. 76.)

     As a Housing Assignment Officer, Defendant Perez states that
her duty is to find available cells to house inmates in yard four.
(Mot. Summ. J. Attach. #1 Mem. P. & A. 16, ECF No. 52 (citing Compl.
5, ECF No. 1).)  The ICC evaluates special conditions relevant to an
inmate's housing assignment, such as the location of any enemies,
and Perez relies on these determinations when she selects yard
assignments for prisoners recently released from administrative
segregation.  (Id. (citing id. Attach. #2 Separate Statement
Undisputed Facts 3-4).)  Easter admits he has not communicated with
Perez in more than ten years.  (Id. (citing id. Attach. #2 Separate
Statement Undisputed Facts 4).)

     The Plaintiff argues that although Officer Perez was the
housing officer in yard four, she could have assigned Plaintiff to
any prison yard she chose.  (Opp'n 7, Mar. 24, 2011, ECF No. 76.)
Plaintiff also contends that he never signed any forms agreeing to
go back to yard four, and everything was documented regarding where
he was supposed to be housed after his release from administrative
segregation.  (Opp'n 2, Mar. 11, 2011, ECF No. 73.)  Easter explains
that he never attempted to communicate his safety concerns about
yard four to Defendant Perez because she does not speak with
prisoners and therefore would not have listened to him anyway.
(Opp'n 7, Mar. 24, 2011, ECF No. 76; Mot. Summ. J. Attach. #1 Mem.
P. & A. 7, ECF No. 52).)

//

//

I.  **Sufficiently obvious risk**

Easter must show that Officer Perez was aware of a "substantial risk of serious harm" to Plaintiff.  Deliberate indifference requires an actual perception of risk.  <u>Thomas v. Hernandez</u>, No. C 01-4685 THE (pr), 2003 U.S. Dist. LEXIS 11272, at *17 (N.D. Cal. June 30, 2003); <u>see also</u> <u>Farmer</u>, 511 U.S. at 840.

> The standard does not require that the guard or official "'believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault.  But, on the other hand, he must have more than a mere suspicion that an attack will occur.'"

<u>Berg v. Kincheloe</u>, 794 F.2d 457, 459 (9th Cir. 1986) (quoting <u>State Bank of St. Charles v. Camis</u>, 712 F.2d 1140, 1146 (7th Cir. 1983)). Advance notification is not a necessary element of an Eighth Amendment failure-to-protect claim.  <u>Farmer</u>, 511 U.S. at 849.

Easter was transferred to administrative segregation after the August 27, 2006 riot and was interviewed by the classification committee on August 30, 2006.  (Mot. Summ. J. Attach. #2 Separate Statement Undisputed Facts 1-2, ECF No. 52; <u>see</u> Compl. 5, ECF No. 1; Opp'n 1,6, ECF No. 76.)  On September 29, 2006, the committee met with Easter again and reviewed his central file before determining that he could return to the general population; Plaintiff was transferred to yard two without expressing safety concerns regarding enemies in yard four.  (Mot. Summ. J. Attach. #2 Separate Statement Undisputed Facts 3, ECF No. 52; <u>id.</u> Attach. #3 App. Evidence Ex. K Decl. Panichello 70; <u>see also</u> <u>id.</u> Ex. J Decl. Morris 65; Opp'n 6-7, Apr. 1, 2011, ECF No. 76.)  The record does not contain a copy of the chrono from the committee's September 29, 2006 review, although a copy of the chrono from the committee's August 30, 2006 interview

1  of Easter is before the Court.  (<u>See</u> Mot. Summ. J. Attach. #2

2  Evidence Ex. E, at 12.)

3      In October 2006, Easter was removed from facility two and

4  transferred to the reception center in yard four where he stayed

5  temporarily until Perez determined where he should be located.

6  (Compl. 3, ECF No. 1; Mot. Summ. J. Attach. #2 Separate Statement

7  Undisputed Facts 3, ECF No. 52; <u>id.</u> Attach. #3 App. Evidence Ex. L

8  Decl. Perez 73; Opp'n 5-6, Apr. 1, 2011, ECF No. 76.)  According to

9  Perez, "The purpose of the Reception Center is to provide short-term

10 housing for inmates while they are processed and classified.  After

11 an inmate is evaluated, and an appropriate institutional placement

12 has been made, the inmate is then moved to a non-temporary housing

13 unit or endorsed."  (Mot. Summ. J. Attach. #3 App. Evidence Ex. L

14 Decl. Perez 73, ECF No. 52.)  Soon after Plaintiff was transferred

15 to the reception center, Perez assigned him to housing in facility

16 four.  (<u>Id.</u> Attach. #2 Separate Statement Undisputed Facts 3, ECF

17 No. 52; <u>id.</u> Attach. #3 App. Evidence Ex. L Decl. Perez 73.)

18     Easter alleges that Officer Perez had control over Plaintiff's

19 yard assignment and could have assigned him to any yard she chose.

20 (Opp'n 7, Mar. 24, 2011, ECF No. 76; <u>see</u> Mot. Summ. J. Attach. #1

21 Mem. P. & A. 16, ECF No. 52.)

22     Defendant Perez explains that since 2006, she has been a

23 Correctional Officer assigned to "Inmate Housing Assignments" at

24 Donovan.  (Mot. Summ. J. Attach. #3 App. Evidence Ex. L Decl. Perez

25 72, ECF No. 52.)  She states, "I am responsible for transferring

26 inmates from the Reception Center at Building No. 16, to housing

27 units 17-20, and the dormitory (Facility IV), once they are

28 processed and space becomes available."  (<u>Id.</u> at 72-73.)  Inmates

are "processed and classified" while they are held in the reception center.  (Id. at 73.)  A triable issue of fact exists as to whether Perez had the authority to assign Easter to a yard other than yard four.  Even if she had the authority to transfer Easter to a different facility and yard, the trier of fact must determine whether Perez knew that keeping Plaintiff in facility four and on yard four would subject him to a risk of harm.  See Thomas, 611 F.3d at 1151.

Plaintiff insists that his inmate file contained incident reports documenting the first racial riot as well as instructions as to where he and other African-American inmates should be housed upon their release from administrative segregation.  (Compl. 2, ECF No. 1; Opp'n 2, Mar. 11, 2011, ECF No. 73.)  A prisoner's central file contains "documents and entries in documents pertaining to an inmate that are prepared at or near the time of the occurrence by persons with knowledge of the circumstances or events."  (Reply Apr. 7, 2011, Attach. #1, at 1, ECF No. 77.)

A trier of fact could also find that after reviewing Plaintiff's central file, the risk to Easter's safety in prison yard four would have been "obvious" to Perez.  She was responsible for locating appropriate housing for Easter, and if Perez reviewed his central file, she would have been aware that Plaintiff was recently disciplined for participating in a large-scale, racially-motivated riot in facility four approximately one month earlier.  (Mot. Summ. J. Attach. #2 Separate Statement Undisputed Facts 1, ECF No. 52; see Compl. 5, ECF No. 1; Opp'n 1, ECF No. 76); see Swan v. United States of America, 159 F. Supp. 2d 1174, 1182 (N.D. Cal. 2001) ("[T]urning

1  a blind eye to the relevant surrounding facts will not shield a
2  prison official from liability.")

3      Easter's involvement in the racial riot with Caucasian, skin
4  head inmates in facility four was well documented.  Officer Perez
5  does not allege she was unaware of the racial riot at facility four,
6  that Plaintiff was disciplined for participating in the first riot,
7  or that the Caucasian inmates still remained in facility four.  See
8  also Bejarano v. NDOC, No. 3:08-CV-00256-RAM, 2011 U.S. Dist. LEXIS
9  6180, at *19 (D. Nev. Jan. 19, 2011) (denying defendants summary
10 judgment when the evidence suggested that plaintiff's involvement in
11 a prior assault with members of the Sureno gang was documented, and
12 other Sureno members had been transferred to the same facility along
13 with plaintiff).  The minimal time between the August 27, 2006 riot
14 and Perez's decision to keep Easter in the same yard in October 2006
15 is additional evidence that creates a triable issue of material
16 fact.  See Farmer, 511 U.S. at 842 (finding issue of fact when
17 evidence illustrated that a risk of inmate attacks was well-
18 documented or expressly noted by prison officials in the past, and
19 that defendant had been exposed to information concerning the
20 attacks); see also Thomas, 611 F.3d at 1151 (explaining that in
21 determining whether a risk to an inmate's health is obvious, a
22 prison official is deemed to have the general knowledge of an
23 individual performing the functions of that job).

24      Perez's assertion that there were no enemies on Easter's enemy
25 list before the second riot is insufficient to entitle her to
26 summary judgment.  The chrono that shows Easter had no enemies up
27 through March 1, 2007, which is more than three months after the
28 November 2006 attack, also shows that Easter had a suspected gang

affiliation with "59 Brim (Blood)."  (Mot. Summ. J. Attach. #3 App. Evidence Ex. D, at 10, ECF No. 52.)

Moreover, the Supreme Court has expressly rejected Defendants' argument that Easter was required to alert them of a threat from a specific individual.  Farmer, 511 U.S. at 849.

> Because the District Court may have mistakenly thought that advance notification was a necessary element of an Eighth Amendment failure-to-protect claim, we think it proper to remand . . . for application of the Eighth Amendment principles explained above.

> The District Court's opinion is open to the reading that it required not only advance notification of a substantial risk of assault, but also advance notification of a substantial risk of assault posed by a particular fellow prisoner.  See App. 124 (referring to "a specific threat to [a prisoner's] safety").  The Eighth Amendment, however, imposes no such requirement.

Id.; id. at n.10 (citation omitted).

Easter was disciplined for his involvement in the prior race riot.  Incident reports and related documents were in Plaintiff's central file.  "Although the obviousness of a risk is not conclusive," Defendant Perez does not avoid liability if she merely "declined to confirm inferences of risk that [she] suspected to exist . . . ."  Farmer, 511 U.S. at 843 n.8.

Reasonable minds could differ as to whether Perez was deliberately indifferent to a substantial risk leaving Easter at facility four could lead to serious harm.

### ii.  No reasonable justification

Defendant Perez does not acknowledge there was a risk or threat to Plaintiff's safety and does not argue that she responded reasonably to the risk.  See Farmer, 511 U.S. at 844.  From her declaration, it is unclear whether Officer Perez maintains that she

lacked the authority to reassign Easter to a different yard if he
had enemies at facility four.  (See Mot. Summ. J. Attach. #3 App.
Evidence Ex. L Decl. Perez 72-74, ECF No. 52.)  Assuming she lacked
that authority, at a minimum, a reasonable response to a serious
safety concern would be to refer Easter's request to others.  See
Longoria v. State of Texas, 473 F.3d 586, 594 (5th Cir. 2006).  The
reasonableness of her response raises issues of material fact that
cannot be resolved by summary judgment.  A finder of fact could
determine that Perez's decision not to transfer Plaintiff from yard
four was unreasonable.  See Thomas, 611 F.3d at 1150; see also
Farmer, 511 U.S. at 844-45.

For all of these reasons, Officer Perez's Motion for Summary
Judgment regarding Easter's Eighth Amendment claim against her
should be **DENIED.**

### b.  Lieutenant Panichello

Easter contends that Lieutenant Panichello escorted Plaintiff
from facility two to facility four despite Plaintiff's verbal
statements to the lieutenant that he should not be transferred back
to that prison yard.  (Opp'n 2, Mar. 11, 2011, ECF No. 73; Opp'n 2,
6-7, Mar. 24, 2011, ECF No. 76.)

In his Motion, Defendant Panichello submits that he does not
recollect Plaintiff communicating even a general safety concern
about being rehoused in yard four.  (Mot. Summ. J. Attach. #1 Mem.
P. & A. 17, ECF No. 52.)  Even if this occurred, the lieutenant
contends Easter has not identified a specific threat to his safety.
(See id.)  He asserts that Easter does not elaborate as to what he
"expressed" to the lieutenant, and there was no reason for him to
knew that for safety reasons, Plaintiff should not be moved to

facility four.  (Reply 5-6, Apr. 7, 2011, ECF No. 77.)  The

Defendant argues that to be liable, he must have had more than a

mere suspicion that an attack would occur.  (Id. at 6 (citing Berg,

794 F.2d at 459).)

     In his Opposition, the Plaintiff contends he informally

expressed his concerns to Panichello about being rehoused in yard

four, but Defendant's response was "we have no where el[s]e to put

[you]."  (Opp'n 2, Mar. 11, 2011, ECF No. 73; see Opp'n 6, Mar. 24,

2011, ECF No. 76.)  Easter alleges that Panichello's lack of

recollection confirms that the lieutenant walked Easter to yard

four.  (Opp'n 7, Mar. 24, 2011, ECF No. 76.)

                    i.  **Sufficiently obvious risk**

     The parties dispute the extent to which Plaintiff spoke to

Panichello about Easter's reluctance to be transferred back to yard

four.  Plaintiff testified in his deposition that he told the

lieutenant that he should not be moved, and even though Panichello

had the authority to stop the transfer, he did nothing.  (Opp'n 2,

Mar. 11, 2011, ECF No. 73; Mot. Summ. J. Attach. #3 App. Evidence

Ex. P, at 95, ECF No. 52.)  Panichello knew Easter was concerned

about being rehoused in facility four, but the lieutenant said that

he was just following the rules.  (Mot. Summ. J. Attach. #3 App.

Evidence Ex. P, at 95, ECF No. 52.)  The Defendant was joined by a

few other officers who helped escort Plaintiff and the other

African-American inmates to yard four; the prisoners did not want to

go there because their enemies were still there.  (Id.)  "[W]e was

[sic] forced to go, because officers came up to our door and said

you guys are going to move.  You gotta move."  (Id.)

61

The Defendant does not recollect this exchange, but even if it did occur, he asserts Easter did not specify a particular risk of threat.  (<u>Id.</u> Attach. #1 Mem. P. & A. 17.)  Plaintiff testified in his deposition that he was unable to give Panichello names of enemies in yard four because he did not know them.  (Mot. Summ. J. Attach. #3 App. Evidence Ex. P, at 100, ECF No. 52.)  Easter had been told that the Caucasian inmates remained in yard four, but Plaintiff and other African-American inmates had been placed in yard two.  (<u>Id.</u>)

The Supreme Court has held:

> The question under the Eighth Amendment is whether the prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to his future health," and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.

<u>Farmer</u>, 511 U.S. at 843 (internal quotations omitted); <u>contra</u> <u>Williams v. Wood</u>, 223 F. App'x 670, 671 (9th Cir. 1997) (affirming dismissal because plaintiff did allege that he had been assaulted or threatened by other prisoners; his "speculative and generalized fears" of other inmates did not constitute a substantial risk of serious harm).

Although the lieutenant asserts Easter's allegations are inconsistent with Panichello's recollection, a trier of fact may believe Plaintiff's version of the events and find that Defendant had knowledge of and disregarded the risk of moving Easter to facility four.  <u>See</u> <u>Bejarano</u>, 2011 U.S. Dist. LEXIS 6180, at *19 (finding issue of fact where defendants' claim that plaintiff said he "did not have any enemies" conflicted with plaintiff's statements

62

1  in a prison grievance).  "Credibility determinations, the weighing
2  of the evidence, and the drawing of legitimate inferences from the
3  facts are jury functions, not those of a judge, whether he is ruling
4  on a motion for summary judgment or for a directed verdict."
5  Liberty Lobby, Inc., 477 U.S. at 255.

6      Moreover, as discussed above, plaintiff need not specifically
7  alert the defendant of the danger posed by a specific inmate to
8  establish an issue of fact.  See Farmer, 511 U.S. at 849; Harper v.
9  Sheppard, 2000 U.S. App. LEXIS 2365, at *7 (9th Cir. Feb. 14, 2000)
10 (finding defendants' argument that plaintiff could not identify a
11 specific enemy inmate without merit); see also Broadway, 2009 U.S.
12 Dist. LEXIS 21132, at *18-19 (recommending denial of summary
13 judgment because prison official refused to confirm inferences of
14 risk that he suspected existed).

15     A prisoner may establish a serious risk of harm by
16 demonstrating he belongs to an identifiable group of inmates who are
17 frequently singled out by other inmates for violent attacks.
18 Farmer, 511 U.S. at 843.  Given the facts, rational minds could
19 differ as to whether a substantial risk to Plaintiff's safety was
20 obvious to Panichello.

21              ii.  **No reasonable justification**

22     Prison officials who know of a substantial risk to the inmate's
23 safety may escape liability if they responded reasonably.  Thomas,
24 611 F.3d at 1150 (citing Farmer, 511 U.S. at 837).  Staffing
25 considerations may constrain the options available to prison
26 officials.  Berg, 794 F.2d at 461.  "In deciding how to protect a
27 prisoner, officials may face a number of choices, each posing
28 potential dangers to the prisoner and others."  Id.  The record does

1  not establish, and Defendant Panichello does not allege, any

2  justifications for his conduct.

3       Viewing the facts in the light most favorable to Easter, a

4  material issue of fact exists as to whether this Defendant was aware

5  of a substantial risk to Plaintiff's safety and disregarded that

6  risk.  Therefore, Lieutenant Panichello's Motion for Summary

7  Judgment regarding Easter's Eighth Amendment claim against him

8  should also be **DENIED.**

9            **c.  Captain Morris**

10      The Plaintiff maintains that after he was transferred to yard

11 four, he repeatedly asked Captain Morris, both directly and

12 indirectly, to be transferred from facility four and assigned to a

13 different yard because Easter had enemies in that yard.  (Opp'n 2,

14 Mar. 11, 2011, ECF No. 73; Opp'n 8, 10, Mar. 24, 2011, ECF No. 76.)

15 Additionally, Plaintiff contends that yard four was Morris's

16 assigned yard, and he knew that Plaintiff was never supposed to be

17 placed back in that yard.  (Opp'n 2, Mar. 11, 2011, ECF No. 73.)

18      Captain Morris argues that when Easter requested that he be

19 transferred back to yard two, Morris asked if Plaintiff had safety

20 concerns in yard four, and Easter "denied having any safety issues."

21 (Mot. Summ. J. Attach. #1 Mem. P. & A. 18, ECF No. 52.)  The captain

22 states that Plaintiff acknowledges that he did not communicate the

23 names of potential enemies to the Defendant.  (Id.)  Easter also

24 conceded that he "did not speak to defendant Morris in between the

25 two riots."  (Reply 6, Apr. 7, 2011, ECF No. 77.)  Finally, Morris

26 argues that "a generalized fear is insufficient to establish

27 liability."  (Mot. Summ. J. Attach. #1 Mem. P. & A. 18, ECF No. 52

28 (citing Robinson v. Cavanaugh, 20 F.3d 892, 893 (8th Cir. 1994)).)

In response, Plaintiff asserts Morris has admitted that Easter asked him to move Plaintiff out of yard four before the November 2006 riot. (Opp'n 8, Mar. 24, 2011, ECF No. 76.)  Easter explains that Morris refused to talk to him directly; instead, Morris would send the housing officer to relay messages to the inmates. (<u>Id.</u>) Plaintiff states, "That's why I said that I didn't talk to [Morris] before the second riot." (<u>Id.</u>)  When he talked to Morris to explain that he and other inmates should be moved back to yard two where they had "no enemies," the Defendant told Easter that Officer William would talk to them. (Opp'n 2, Mar. 11, 2011, ECF No. 73.) Plaintiff contends that William told Easter that he would be moved, but William did not know where. (<u>Id.</u>)

## I.   <u>Sufficiently obvious risk</u>

The record suggests that on August 30, 2006, and again on September 19, 2006, Captain Morris had actual knowledge of Plaintiff's involvement in the first riot.  The CDC-128G chrono sheet dated August 30, 2006, lists Defendant Morris as a member of the institutional classification committee and recounts the events from Easter's in-person hearing with the committee. (Mot. Summ. J. Attach. #3 App. Evidence Ex. E, at 12, ECF No. 52.)  The chrono states that Plaintiff was placed in administrative segregation on August 27, 2006, because he participated in the riot. (<u>Id.</u>)  The chrono also states that Easter was assigned to a mixed exercise yard with only African-American and Northern Hispanic inmates, and Plaintiff had no enemy concerns on this yard. (<u>Id.</u>)  On September 19, 2006, Captain Morris reviewed the rules violation report and the action taken against Easter for his involvement in the August 2006 riot. (Reply Attach. #1, at 3, Apr. 7, 2011, ECF No. 77.)

1    Although Plaintiff did not specifically tell Morris that
2  inmate Hill posed a particular threat, the circumstances of the
3  August race riot were well known, and Easter's concerns should have
4  prompted Morris to take reasonable measures to protect Easter.  <u>See</u>
5  <u>Hearns v. Terhune</u>, 413 F.3d 1036, 1041-42 (9th Cir. 2005) (quoting
6  <u>Farmer</u>, 511 U.S. at 842) ("The series of planned attacks and
7  religious-related violence at Calipatria State Prison was
8  'longstanding, pervasive, [and] well-documented.'").  Plaintiff was
9  not required to specifically identify the inmates who posed a threat
10 to present a genuine issue of fact.  <u>Farmer</u>, 511 U.S. at 843; <u>see</u>
11 <u>Hearns</u>, 413 F.3d at 1041-42 (drawing the inference that defendants
12 were deliberately indifferent because they knew a group of Muslim
13 inmates had previously attacked plaintiff).  A jury could find that
14 because Morris knew Easter was involved in the August 2006 riot on
15 yard four, ignoring Plaintiff's pleas to be moved created a
16 substantial risk of serious harm.

17            **ii.  <u>No reasonable justification</u>**

18   Once a defendant becomes aware of a substantial risk of serious
19 harm, he must take the risk seriously and conduct appropriate
20 inquiries.  <u>See</u> <u>Madrid</u>, 889 F. Supp at 1267 n.213.  A prison
21 official is liable if he merely "declined to confirm inferences of
22 risk that he strongly suspected to exist . . . ."  <u>Farmer</u>, 511 U.S.
23 at 843 n.8.  There is no evidence that Morris asked Easter why he
24 should not be placed in yard four or that he checked Plaintiff's
25 inmate file to determine whether Easter had been involved in
26 altercations with inmates in yard four before.  <u>See</u> <u>Broadway</u>, 2009
27 U.S. Dist. LEXIS 21132, at *18-19 (denying summary judgment to two
28 defendants who failed to take action in response to plaintiff's

1 safety concerns); see also Knight v. Lea, No. CIV S-07-0751-FCD-GMK-

2 P, 2009 U.S. Dist. LEXIS 58513, at *18-29 (E.D. Cal. July 9, 2009)

3 (granting summary judgment where plaintiff expressed his safety

4 concerns to defendants and they took reasonable steps to address the

5 concerns by removing plaintiff from the general population, placing

6 him in administrative segregation, and conducting an investigation

7 into the safety concerns).

8      The reasonableness of Captain Morris's justification for

9 failing to investigate Plaintiff's safety concerns or refusing to

10 remove Easter from facility four raises material issues of fact.

11 Accordingly, Defendant Morris's Motion for Summary Judgment should

12 also be **DENIED**.

13 **C.   Qualified Immunity**

14      Defendants Perez, Panichello, and Morris argue that they are

15 each entitled to qualified immunity because they reasonably believed

16 that their conduct was lawful. (Mot. Summ. J. Attach. #1 Mem. P. &

17 A. 18, ECF No. 52.) Assuming Easter has adequately alleged an

18 Eighth Amendment claim against them, Defendants contend that

19 "reasonable officers in [their] positions would not have been on

20 notice that their conduct was unlawful." (Id. at 18-19.) They

21 believed their actions were lawful because Easter never expressed

22 safety concerns to any of them, neither Plaintiff nor inmate Hill

23 were involved in the August 2006 riot, and Hill was not identified

24 as an enemy of Easter. (Id. at 19.) The Defendants conclude that

25 it is "unclear how defendants would have been aware of this safety

26 concern." (Id.)

27      The correctional officers claim that their mental state is an

28 element of the purported constitutional deprivation. (Id. at 19-20

1  (citing <u>Jeffers v. Gomez</u>, 240 F.3d 845, 854 (9th Cir. 2001)).)

2  Easter must present facts illustrating that they acted, or failed to

3  act, with knowledge of a substantial risk of harm, and were

4  deliberately indifferent to that risk.  (<u>Id.</u> at 20.)  Defendants

5  contend, "There is no evidence that any of [us] acted with

6  deliberate indifference to plaintiff's safety, or with any intent

7  other than good faith, as demonstrated above."  (<u>Id.</u>)  Therefore,

8  Defendants Perez, Panichello, and Morris assert they are each

9  entitled to qualified immunity.  (<u>See</u> <u>id.</u> at 18-20.)

10      In <u>Hamilton v. Endell</u>, 981 F.2d 1062, 1066 (9th Cir. 1992), the

11  Ninth Circuit previously held that "[a] finding of deliberate

12  indifference precludes a finding of qualified immunity."  <u>Id.</u>  The

13  Supreme Court subsequently ruled that the qualified immunity inquiry

14  is independent from the constitutional inquiry.  <u>Saucier v. Katz</u>,

15  533 U.S. 194, 202 (2001), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Pearson</u>, 555

16  U.S. 223, 129 S. Ct. 808 (2009).  The Ninth Circuit has reconsidered

17  <u>Hamilton</u> in light of <u>Saucier</u>.  "[W]e conclude that <u>Hamilton</u>, which

18  collapses the deliberate indifference part of the constitutional

19  inquiry into the qualified immunity inquiry, has been undermined by

20  <u>Saucier</u>.  Instead, courts must follow the <u>Saucier</u> framework."  <u>Ford</u>

21  <u>v. Ramirez-Palmer (Estate of Ford)</u>, 301 F.3d 1043, 1050 (9th Cir.

22  2002).  Therefore, "Courts may not simply stop with a determination

23  that a triable issue of fact exists as to whether prison officials

24  were deliberately indifferent; instead, the qualified immunity

25  inquiry is separate from the constitutional inquiry, and courts must

26  undertake the qualified immunity analysis separately."  <u>Id.</u> at 1053.

27      "[G]overnment officials performing discretionary functions,

28  generally are shielded from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  Qualified immunity is immunity from suit for monetary damages, but it is not immunity from suit for declaratory or injunctive relief.  <u>Hydrick v. Hunter</u>, 449 F.3d 978, 992 (9th Cir. 2006).  It protects "all but the plainly incompetent or those who knowingly violate the law."  <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

When considering a claim for qualified immunity, courts engage in a two-part inquiry:  Do the facts show that the defendant violated a constitutional right, and was the right clearly established at the time of the defendant's purported misconduct? <u>Delia v. City of Rialto</u>, 621 F.3d 1069, 1074 (9th Cir. 2010) (quoting <u>Pearson v. Callahan</u>, 555 U.S. 223, ___, 129 S. Ct. 808, 815-16 (2009)).  Courts consider whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." <u>Saucier</u>, 533 U.S. at 201.  A right is clearly established if the contours of the right are so clear that a reasonable official would understand that what he is doing violates that right.  <u>Id.</u> at 202 (quotation omitted).  This standard ensures that government officials are on notice of the illegality of their conduct before they are subjected to suit.  <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002) (quoting <u>Saucier</u>, 533 U.S. at 206).  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . ." <u>Id.</u>

The Supreme Court recently found that the sequence of this two-step inquiry is no longer "an inflexible requirement." Pearson, 555 U.S. at ___, 129 S. Ct. at 818.  Thus, it is within the court's discretion to decide which step to address first.  Id.; see Delia, 621 F.3d at 1075 (citing Brooks v. Seattle, 599 F.3d 1018, 1022 n.7 (9th Cir. 2010); Bull v. City & County of San Francisco, 595 F.3d 964, 971 (9th Cir. 2010)).  "If the Officers' actions do not amount to a constitutional violation, the violation was not clearly established, or their actions reflected a reasonable mistake about what the law requires, they are entitled to qualified immunity." Brooks, 599 F.3d at 1022 (citing Blankenhorn v. City of Orange, 485 F.3d 463, 471 (9th Cir. 2007)); see James v. Rowlands, 606 F.3d 646, 651 (9th Cir. 2010) (quoting Pearson, 555 U.S. at ___, 129 S. Ct. at 816, 818).

In ruling on a motion for summary judgment based on qualified immunity, the court must decide the "'purely legal' issue of 'whether facts alleged by the plaintiff support a claim of violation of clearly established law.'" Lytle v. Wondrash, 182 F.3d 1083, 1086 (9th Cir. 1999) (quoting Mitchell v. Forsyth, 472 U.S. 511, 528 n.9 (1985)).  The court must view the facts in the light most favorable to the nonmoving party and determine whether the movant is nonetheless entitled to qualified immunity as a matter of law.  Id. (citing Moran v. State of Washington, 147 F.3d 839, 844 (9th Cir. 1998)).

**1.   Violation of a Constitutional Right**

The Plaintiff maintains that Defendants Perez, Panichello, and Morris violated his Eighth Amendment right to reasonable safety and to be protected from violence while in custody.  See Helling, 509

1   U.S. at 33.   If the Defendants disregarded the known risk that

2   Easter would be attacked by skin heads in facility four,

3   nevertheless reassigned him to yard four, physically escorted him to

4   facility four, and ignored Plaintiff's safety concerns once in yard

5   four, the Defendants failed to safeguard Easter from the attack.

6   See, e.g., Estate of Ford, 301 F.3d at 1050.   A triable issue of

7   fact exists as to whether the Defendants each deprived Easter of his

8   Eighth Amendment rights.   Even so, whether Easter's right to

9   reasonable protection from attack was "clearly established" controls

10  the qualified immunity inquiry.

11        **2.    Whether the Right Was Clearly Established**

12        "Whether a right is clearly establishs turns on the 'objective

13  legal reasonableness of the action, addressed in light of the legal

14  rules that were clearly established at the time it was taken.'"

15  Clouthier v. County of Contra Costa, 591 F.3d 1232, 1241 (9th Cir.

16  2010) (quoting Pearson, 555 U.S. at ___, 129 S. Ct. at 822).   "This

17  is 'a two-part inquiry:  (1) Was the law governing the state

18  official's conduct clearly established?  (2) Under that law could a

19  reasonable state official have believed his conduct was lawful?'"

20  Estate of Ford, 301 F.3d at 1050 (quoting Jeffers, 267 F.3d at 910);

21  Browning v. Vernon, 44 F.3d 818, 822 (9th Cir. 1995).

22        First, the law governing the Defendants' conduct was clearly

23  established.   "Whether the right is clearly established in a

24  particular case is judged as of the date of the incident alleged,

25  and is a pure question of law." Phillips v. Hust, 338 F. Supp. 2d

26  at 1162 (citing Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th

27  Cir. 1993)).   "[T]he right alleged to have been violated must not be

28  so broadly defined as to 'convert the rule of qualified that our

                                    71                        09cv555 LAB(RBB)

cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" _Cunningham_, 229 F.3d at 1288 (quoting _Anderson v. Creighton_, 483 U.S. 635, 639 (1987)). "On the other hand, . . . the right can not be so narrowly construed so as to 'define away all potential claims.'" _Id._ (quoting _Kelley v. Borg_, 60 F.3d 664, 667 (9th Cir. 1995)).

A prisoner's right to be protected from a substantial risk of assault by other prisoners was clearly announced in _Farmer_, if not before. _See Farmer_, 511 U.S. at 842-43. There, the Supreme Court made clear that if a prison official knows of an excessive risk to inmate safety, or infers from known facts that a substantial risk of serious harm exists, he violates the law by disregarding the risk. _Id._ at 835-36. In 2002, the Ninth Circuit reiterated that the right was established by _Farmer_. _Estate of Ford_, 301 F.3d at 1050. Thus, the right was clearly established.

Second, viewing the evidence in the light most favorable to Easter, a reasonable prison official in the Defendants' positions would believe that his or her conduct was unlawful. _See id._ at 1045. "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." _Saucier_, 533 U.S. at 202. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." _Id._

The Defendants argue that the law does not clearly define at what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes. (Mot. Summ. J. Attach. #1 Mem. P. &

1   A. 19, ECF No. 52.)  Defendants analogize this case to <u>Estate of</u>

2   <u>Ford</u>, where the Ninth Circuit held that it would not be clear to a

3   reasonable official when the risk of harm from double-celling

4   psychiatric inmates increases from "some" risk of harm to a

5   "substantial risk of serious harm."  (<u>Id.</u> (citing <u>Estate of Ford</u>,

6   301 F.3d at 1051).)  "Because plaintiff did not have an identified

7   safety concern on Facility IV, defendants reasonably believed they

8   could house plaintiff in that facility, and their actions were

9   lawful."  (<u>Id.</u>)

10      "[G]ranting summary judgment on the ground of qualified

11   immunity is 'improper if, under the plaintiff's version of the

12   facts, and in light of the clearly established law, a reasonable

13   officer could not have believed his conduct was lawful.'"  <u>Martinez</u>

14   <u>v. Bryant</u>, No. CV 06-5344-GW(AGR), 2008 U.S. Dist. LEXIS 11258, at

15   *26 (C.D. Cal. Dec. 12, 2008) (quoting <u>Schwenk v. Hartford</u>, 204 F.3d

16   1187, 1196 (9th Cir. 2000)).  Moreover, this case is distinguishable

17   from <u>Estate of Ford</u>, which involved assigning two mentally ill

18   prisoners to the same cell, and one inmate eventually killed the

19   other.  <u>Estate of Ford</u>, 301 F.3d at 1052-53.  There, the two inmates

20   were not enemies, had no gang-related conflict, were not a

21   "predator" and "victim," had been previously celled together without

22   incident, and both inmates wanted to be celled together again.  <u>Id.</u>

23   at 1052.  The defendants did not ignore facts suggesting that

24   placing these two prisoners in the same cell posed a substantial

25   risk of serious harm to the deceased plaintiff.  The Ninth Circuit

26   held that the defendants were entitled to qualified immunity.  <u>Id.</u>

27   at 1053.  In light of the circumstances each defendant faced, it

28   would not have been clear to a reasonable prison official that

73                                    09cv555 LAB(RBB)

1  double-celling the two inmates posed such a substantial risk of
2  serious harm that doing so would be unconstitutional.  Id.
3      Here, in contrast, Easter's version of the facts illustrates
4  that he was not supposed to be housed with the Caucasian prisoners
5  in facility four.  Plaintiff alleges, and the Defendants do not
6  produce evidence to rebut, that after the August 27, 2006 racial
7  riot, prison officials placed the Caucasian inmates in facility four
8  and placed the African-American inmates in facility two.  (Mot.
9  Summ. J. Attach. #3 App. Evidence Ex. E, at 12, Ex. P, at 100, ECF
10 No. 52.)  These inmates were segregated in response to the first
11 racial riot in yard four and should not have been routinely rehoused
12 together in that yard again.  Cf. Estate of Ford, 301 F.3d at 1052.
13 Easter contends that these Defendants knew, either by reviewing his
14 central file or by communicating with him, that being assigned to
15 yard four with the skin head inmates who participated in the August
16 2006 riot posed a serious risk.  Defendants' attempt to analogize
17 these facts to those in Estate of Ford is not persuasive.
18     "[I]n resolving a motion for summary judgment based on
19 qualified immunity, a court must carefully examine the specific
20 allegations against each individual defendant . . . ."  Cunningham
21 v. Gates, 229 F.3d 1271, 1287 (9th Cir. 2000).  "Reasonable
22 extrapolations of prior law to circumstances where it would have
23 been apparent to reasonable officers will suffice to determine
24 reasonableness in the particular circumstances."  Barnes v. Denney,
25 No. CIV S-07-1380 GGH P, 2010 U.S. Dist. LEXIS 25251, at *61 (E.D.
26 Cal. Mar. 17, 2010) (citing Burke v. City of Alameda, 586 F.3d 725,
27 734 (9th Cir. 2009)).
28 //

74                                    09cv555 LAB(RBB)

a.   **Officer Perez**

As to Officer Perez, summary judgment on the ground of qualified immunity is only proper if, under Easter's version of the facts, a rational officer in Perez's position could not have believed her conduct was unlawful. Martinez, 2008 U.S. Dist. LEXIS 11258, at *26.

After considering "all pertinent information," a rational officer would have understood that keeping Easter in yard four with purported members of the skin heads gang was unconstitutional. See Swan, 159 F. Supp. 2d at 1182 (turning a blind eye to relevant facts does not allow an official to escape liability); see also Farmer, 511 U.S. at 842 (finding defendant must have known about risk when the risk of inmate attacks was documented and defendant was exposed to the information).

A reasonable housing assignment officer would have known that assigning Plaintiff to housing in the same prison yard in which a racial riot had taken place roughly one month before with a large number of Caucasian inmates, some of which were still housed in yard four, would pose a substantial risk of serious harm. Cf. Estate of Ford, 301 F.3d at 1052. Likewise, failing to transfer Easter from yard four would pose a substantial risk of serious harm. Id. It would also have been clear that Easter was entitled to protection from inmates with whom he allegedly had a gang-related conflict. Officer Perez is not entitled to qualified immunity.

b.   **Lieutenant Panichello**

Defendant Panichello is also not entitled to summary judgment on this ground. Viewing the evidence in the light most favorable to Easter, a reasonable official would know it was unlawful to ignore

an inmate's express reluctance to be moved to a certain prison yard and to refuse to investigate the prisoner's concerns.  See Madrid, 889 F. Supp at 1267 n.213 (citing Farmer, 511 U.S. at 843 n.8) (explaining that once a defendant becomes aware of a risk, he must consider the risk seriously and conduct appropriate inquiries).  At the time the conduct occurred, the law was that a prison official is liable if he refused to verify facts he suspected were true, or declined to confirm inferences of risk that he thought existed.  Id. Moreover, the law clarified that an inmate need not identify the specific enemy that posed the particular threat.  Farmer, 511 U.S. at 843; Harper, 2000 U.S. App. LEXIS 2365, at *7.  While escorting Easter and others to facility four and in response to Easter's express concerns, Defendant Panichello did nothing beyond informing Plaintiff that the prison had nowhere else to place him.  This was insufficient to confer qualified immunity.

### c.  Captain Morris

Finally, a reasonable officer in Captain Morris's position would know that failing to respond to a prisoner's pleas to be removed from a prison yard where he had been implicated in a racial riot without investigating the inmate's concerns was unlawful.  See Madrid, 889 F. Supp at 1267 n.213 (citing Farmer, 511 U.S. at 829 n.8).

Captain Morris admits Easter communicated his safety concerns. Defendant asked Plaintiff for the names of those who threatened his safety, but Morris concedes he did nothing further when Easter was unable or unwilling to provide the names of specific enemies housed in facility four.  Under these circumstances, Defendant Morris should not be entitled to qualified immunity as a matter of law.

1  See Broadway, 2009 U.S. Dist. LEXIS 21132, at *6, 28-29

2  (recommending qualified immunity be denied where, in 2005, a prison

3  officer merely asked plaintiff for names of inmates he feared and

4  failed to investigate further).

5         **d.   Conclusion**

6      The general law regarding claims arising under the Eighth

7  Amendment for the failure to protect was clearly established at the

8  time of the Defendants' alleged violations.  The purpose of summary

9  judgment is to avoid unnecessary trials when there is no dispute

10 over the facts before the court.  Northwest Motorcycle Ass'n v. U.S.

11 Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994).  Upon

12 resolution of the factual issues in dispute, the Defendants may be

13 relieved of liability.  But if Plaintiff's version of events

14 prevails at trial, a jury might conclude that the Defendants knew of

15 and disregarded substantial risks of harm to Easter.  Under such

16 circumstances, the Defendants' actions are not protected by

17 qualified immunity, and summary judgment on this ground is

18 inappropriate.  The district court should **DENY** the Defendants'

19 Motion for Summary Judgment based on qualified immunity.

20           **VI.   CONCLUSION**

21     The Court construes Defendants' Motion for Summary Judgment on

22 exhaustion grounds as a nonenumerated motion to dismiss under

23 Federal Rule of Civil Procedure 12(b).  The Defendants' request that

24 the Court dismiss Plaintiff's claims for failure to exhaust should

25 be **DENIED**.  The Plaintiff's request to conduct additional discovery

26 to oppose Defendants' Motion is **DENIED**.

27     Viewing the evidence in the light most favorable to Plaintiff,

28 a genuine issue of material fact exists as to whether Easter was

confined under conditions that posed a substantial risk of serious harm.  An issue of fact also exists as to whether each Defendant was aware of a serious risk to Plaintiff's safety and disregarded that risk.  The district court should **DENY** Defendants' Motion for Summary Judgment as to Easter's Eighth Amendment claim.  Additionally, the Defendants contend that they should be shielded from liability on the basis of qualified immunity.  For the reasons stated, their Motion for Summary Judgment based on qualified immunity should also be **DENIED.**

This Report and Recommendation will be submitted to the United States District Court judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written objections with the Court and serve a copy on all parties on or before July 22, 2011.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed on or before August 12, 2011.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  <u>Martinez</u> <u>v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:   June 29, 2011

_____
Ruben B. Brooks
United States Magistrate Judge

cc:   Judge Burns
      All Parties of Record